CHRISTINA ULRICH v. JOHN ULRICH.

1. DIVORCE; *Jurisdiction of Supreme Court.* The supreme court has jurisdiction of cases for divorce, when brought up on error.

2. ———— *Practice; Findings; Error.* Where the only cause of error is that the decision of the district court is against the evidence, and the facts are not found, the supreme court will not reverse the judgment unless it appears so clearly against the evidence as to preclude the possibility of being mistaken about it.

*Error from Leavenworth District Court.*

THE plaintiff filed her petition on the 23d of February, 1871, praying for a divorce from the defendant on the ground of extreme cruelty. The defendant filed his answer, or cross bill. setting up in substance, First, general denial; Second, adultery; Third, habitual drunkenness; and Fourth, gross neglect of duty. The plaintiff filed a reply, denying all the allegations of the answer. The cause was tried at the May Term, 1871. Four witnesses were sworn for plaintiff whose testimony is in the bill of exceptions, and is as follows:

. *Christina Ulrich:* I am the plaintiff; have resided in Leavenworth county for a number of years last past, and am now a resident of this county; I was married to John Ulrich, defendant, on the 26th of January last, and lived with him as his wife up to the 19th of February; very soon after our marriage he commenced to ill treat me, by the use of abusive language; he called me hard names, and said he would give me a thousand dollars if I would go away and never come back again; he found fault with my little daughter, Augusta Hussar, child of my former marriage; said that he would send her away, and that he would put her *in a bad house.* On the evening of the 19th of February last he came into the room where I was setting the table for supper, commenced abusing me, called me "*a damned bitch*," he came up to the table, took a plate, threw it upon the floor, and said I was nothing but "*a damned old whore;*" and speaking of Augusta, my daughter, he said that she was good for nothing, and that he would put her in a house on the levee; I told him that my child should never go to any such place; he then took me by the neck with one hand, choked me, and struck me in the breast knocking me over into

a chair, at the same time saying, " *You damned bitch, get out of my house.*" I told him that I would go, and asked him not to kill me. He choked and scratched me so that blood run out upon my neck. As soon as I was able to get up, I took my little girl with me and went to the house of Mr. John Utz, and I have not been back to Ulrich's since. Ulrich had known me for a long time previous to our marriage, and was acquainted with my former husband, Mr. Hussar. My former husband died last November.

*Augusta Hussar:* I am the daughter of Mrs. Ulrich; am 13 years of age; was with my mother when she was living with Ulrich in this city. Ulrich called us very bad names; saw him choke and strike mother; I told him not to hurt mother, and he called me a " *little bitch;*" after he struck mother I saw blood upon her face and neck; he cursed, and told us both to leave the house and never come back again. I went with mother to Mr. Utz's house.

*Frederika Bunken:* One Sunday evening in February Ulrich came out upon the street and commenced abusing Mrs. Ulrich, by calling her very bad names, and said that he wished she would keep away, that he had no use for her; he said that she was a bad woman, and that her little daughter was no better; he said the place for her was in a house on the levee. I saw Mrs Ulrich a few days after, and noticed bruises on her neck.

*John Utz:* On the 19th of February last, in the evening, Mrs. Ulrich, with her daughter, came to my house; she was very much excited, and had blood upon her face and neck, and said that Ulrich had beaten her.

The defendant offered no evidence. No " conclusions of fact" were made. The journal entry of the trial as shown by the record is as follows:

" Now on this day comes the said plaintiff herein, by Sherry & Helm her attorneys, and also comes the said defendant by Stillings & Fenlon his attorneys, and thereupon this cause comes on for trial; and the court having heard the evidence adduced, and duly considered the same, now refuses *to grant the said plaintiff a decree of divorce in this case.* To which decision of the court said plaintiff excepts."

The plaintiff brings the case to this court by petition in error for review.

*Sherry & Helm,* for plaintiff in error:

The decision of the district court is contrary to law. Sec.

639 of the code provides that a divorce may be granted for
"extreme cruelty." This is the ground for divorce alleged in
the petition, and extreme cruelty is conclusively established by
the evidence.  Mr. Bishop in his work on Marriage and Divorce,
defines cruelty as follows:  " Cruelty is such conduct in one of
of the married parties as renders further cohabitation danger-
ous to the physical safety of the other, or creates in the other
such reasonable apprehension of bodily harm as materially to
interfere with the discharge of marital duties."  In an earlier
edition of the same work Bishop defines cruelty to be, "Any
conduct, in one of the married parties, which furnishes a rea-
sonable apprehension that the continuance of the cohabitation
would be attended with bodily harm to the other."  An emi-
nent judge in Pennsylvania, in alluding to the subject of cruelty
in a case tried before him, has defined it as follows: "To render
the condition of a wife intolerable, and her life burdensome, it
is not necessary that there should be blows, or cruel and barba-
rous infliction of batteries that endanger her life."

But the district court took a different view of the question.
At the conclusion of the evidence, and without giving the
plaintiff an opportunity to be heard by argument of counsel,
the court proceeded to render judgment refusing to grant a
decree of divorce, assigning as a reason, " that the parties had
not been married long enough to entitle plaintiff to a decree."
Notice was given, and the plaintiff filed her motion for a new
trial, which motion was in due time argued, and by the court
overruled.  The court again said—

"That it did not think the parties had been married long
enough to entitle the plaintiff to a decree.  In a little over two
months after the death of the former husband, and before the
grass had grown green over his grave, the plaintiff had mar-
ried again; and within a month after the second marriage, she
rushes into court asking for a divorce.  There seems to have
been an indecent haste on the part of the plaintiff, and for that
reason I do not believe that the court in its discretion, should
grant a decree of divorce in this case."

We claim, that when a case is made out the court is *bound*
to grant the decree.  The court however claims that the grant-

ing or withholding a decree for divorce is a matter of *discretion*. We claim it as a matter of *right*, and we claim also that the court can exercise no judicial discretion as against a positive statutory enactment.

The evidence in this case shows beyond any doubt that the defendant has been guilty of extreme cruelty. Not only did he beat and bruise the plaintiff, but was guilty of using towards her the most indecent and brutal language, and at the same time threatening to place her little daughter in a house of ill-fame. What *more* is necessary to make out a case of "extreme cruelty?" But the court below assumes a virtuous indignation over the fact that the plaintiff had married so soon after the death of her former husband. The court says, "that in a little over two months after the death of the former husband, and before the grass had grown green over his grave, she married again, and now rushes into court for a divorce." We must admit that the language of the court is somewhat sympathetic, and well calculated to work up the feelings of the most hardened and obdurate heart. "In less than two months, and before the grass had grown green over the grave of her dead husband, she marries." The language *is* pathetic, and is only equaled by the words of Hamlet, Prince of Denmark, where, in speaking of the second marriage of his mother, he says:

> \* \* \* \* "That it should come to this!
> But two months dead! Nay, not so much, not two;
> So excellent a King; that was to this,
> Hyperian to a Satyr; so loving to my mother,
> That he might not beteem the winds of heaven
> Visit her face too roughly. Heaven and earth!
> Must I remember? Why, she would hang on him
> As if increase of appetite had grown
> By what it fed on; and yet within a month—
> Let me not think on't—Frailty thy name is woman!
> A little month; or ere those shoes were old—
> She ———— married."

It will be seen that there is great similarity between the Prince and the court in this case. In fact, the two cases are in some respects very much alike. The main difference being in the fact that Hamlet worried very much over what he considered a premature marriage on the part of his mother with the

king, without finding any law to help the matter. In this respect, the court has an advantage over Hamlet, for the reason that he has found a law *governing the case.* "'Tis sweet and commendable" to see that people attend properly to their mourning duties, and if poor mortals will not burden themselves with grief, they should be forced to do so by the stern decree of a court clothed with the boundless, unlimited and uncertain power, called "*sound discretion.*" People must be made to mourn, and widows should not be permitted to marry until they are like

> "The withered frame, the ruined mind,
> The wreck by passion left behind,
> A shrivel'd scroll, a scatter'd leaf
> Scarr'd by the autumn blast of grief!"

The court freely admits that the charge of extreme cruelty is fully substantiated by the evidence, but withholds the divorce out of respect to the memory of the former husband, and on the ground that she has been married but a short time. Extreme cruelty is clearly made out, but then the defendant has only called the plaintiff a whore and a damned bitch a few times, beaten her but once, and driven her from her home, hence she ought not to complain. "She has been married but a short time;" she ought to have waited a year or two before making the complaint! She ought to have waited until she had been beaten *a number of times!* She ought to have lived with him until he had maimed and crippled her for life, and placed her daughter *in a house of ill-fame!*

The fact that the cruelty of the husband was inflicted upon the wife within a month after the marriage, is, and should be looked upon and held as an aggravation rather than an excuse. The reason for granting a divorce in this case, under the circumstances shown by the evidence, is ten-fold stronger than if the grievance complained of had occurred years after the marriage. Suppose that the charge had been adultery, and that it had been clearly proven to have occurred the next day after marriage, could the court have refused a decree for the reason that the parties had been married "but a short time?" Or, if

the charge had been that the defendant had a former wife living at the time of subsequent marriage, could the court have refused a decree? Can the court set up its "discretion" as against the plain provision of the law? If so, then the citizen has no legal rights, but is wholly at the mercy of a judge who administers "justice" as fancy dictates. The only discretionary power invested in the court, under our law for granting or withholding a decree, (code § 643,) is where "the parties appear to be in equal wrong."

The fact that the plaintiff in this case is a poor German woman, occupying an humble position in life may have had some influence upon the mind of the court. But we are not aware that the courts of this country are in the habit of giving much weight to the consideration of *rank* and *condition*. In New York in a suit against the husband, Justice Parker, in referring to this matter, observed: "It is said his grossly indecent language, spoken to and of his wife, is to find palliation if not excuse in the fact that the parties moved in a circle of life less refined than others who have enjoyed the advantages of a more cultivated society. But we deny the application of the rule to a case like this. The *decencies* of life belong equally to all classes; and in none are they more carefully and more faithfully observed than among the respectable farmers of our country. The human heart is the same in every grade of society. Delicacy of feeling belongs as well to the cottage as to the statlier mansion. Want of cultivation may excuse an unrefined, or even coarse expression; but it forms not the slightest apology for indecent conduct, or obscene language."

The decision of the court below is clearly against the evidence, and the only question of law involved is as to the right of the court to set up its "discretion" against the plain letter of the law.

The opinion of the court was delivered by

KINGMAN, C. J.: This is a proceeding to reverse a judgment of the Leavenworth district court refusing to grant a divorce to the plaintiff in error. Has this court jurisdiction of the

case? Although this question was not presented in the argument, (there having been no appearance for defendant in error,) it has been too often suggested not to challenge attention. That the present code confers the jurisdiction on this court to review divorce cases in the same manner as other cases, is not questioned. The doubt arises from the provisions of the constitution. Section 18 of art. 2 is as follows: "All power to grant divorces is vested in the district courts, subject to regulation by law;" while § 3 of art. 3 provides that "the supreme court shall have such appellate jurisdiction as may be provided by law." These parts of the constitution are of equal force, and on this point should be considered in connection; and so examined they give the power to grant divorces solely to the district court, subject to such appeal to the supreme court as may be provided by law. This is the legitimate construction of these clauses of the constitution if both are taken together. The law having conferred the appellate jurisdiction on this court, we are constrained to hold, with much reluctance, that the court has jurisdiction of the case.

The errors alleged in this court may be resolved into one, and that is that the decision of the district court was contrary to the evidence. The cause alleged for the divorce was extreme cruelty. The trial was *ex parte*, for though the defendant had answered he was silent on the trial.

The record contains all the evidence, and as it appears therein would seem to prove enough to entitle the plaintiff to a divorce; but it must be borne in mind that the district court had the great advantage of hearing the witnesses, of observing their demeanor while testifying, and all the aids that such position affords in the ascertainment of the truth; and that court finds that there is no cause of divorce—a decision it adhered to on a motion for a new trial. To overturn that decision this court must say that the witnesses were entitled to full credit—that there was not even an innocent exaggeration in their testimony growing out of their temperament, or the exasperation of the moment, or from any other cause; that there were no indications that the action had been brought and the case made up

by collusion. These and many other things must be determined without those opportunities for knowing their truth which the district court possessed. We do not feel authorized to reverse the decision of the district court under these circumstances. If the party had desired this court to determine whether certain facts constituted extreme cruelty, section 290 of the code points out the mode by which that result can be attained, and one that would present the point freed from the embarrassments surrounding this case.

In the argument great stress was laid upon the reasons given by the judge of the district court for the decision made in this case. Those reasons are not in the record, and cannot affect the decision of this case. The judgment is affirmed.

BREWER, J., concurring.

VALENTINE, J.: I concur with the court in this case that the supreme court has jurisdiction of cases for divorce when the same are brought to this court from the district court on petition in error. But I cannot concur in the decision of this case. From the evidence taken in the court below, and brought to this court, it seems to me that " extreme cruelty " was shown beyond all doubt. If so, the court below erred either in its conclusion of law as to what extreme cruelty is, or in its application of the law. I think the court below erred in overruling the plaintiff's motion for a new trial.

*By the Court:* Judgment affirmed.