The opinion of the court was delivered by
Valentine, J.:
This was an action for damages caused by fire originating from sparks emitted from one of the locomotive engines of the plaintiff in error, (defendant below.) After a careful examination of the whole case we have reached the conclusion that if there was any wrong done to plaintiff in error in the trial of this case, it was done principally by the jury, and not by the court. The only error of the court, if there was any error, was in not setting aside the verdict of the jury and granting a new trial on the ground that the verdict was not sustained by sufficient evidence. That the fire which caused the damage was produced by sparks emitted from one of the defendant’s locomotive engines, we think was sufficiently proved, and the jury so find. That engine “No. 9,” was properly constructed, in good repair, carefully managed, and managed by a careful and skillful engineer, was also sufficiently proved, and the jury so find. And that the preponderance of the evidence shows that the fire was caused by sparks emitted from engine No. 9, we also think is clear; but the jury find that the fire was not caused by sparks emitted from engine No. 9, but was caused by sparks emitted from some other engine. This finding was upon conflicting evidence; and while the weight of the evidence was clearly against this finding, and while'it would have been proper for the district court to have set aside the verdict and granted a new trial because said finding was not sustained by sufficient evidence, yet, as there was some evidence to sustain this finding, the supreme court cannot well set aside the verdict and *369 grant a new trial for said reason, after said finding has been approved and sustained by the court below. The evidence shows that the fire occurred on October 12th, 1871, about 1 o’clock p.m. The evidence of the plaintiff did not show, nor tend to show, what particular engine of the defendant caused the fire; and there was no positive or direct evidence on the part of the defendant that showed that it was engine No. 9, The defendant, however, attempted to show that engine No. 9 passed the place where the fire occurred, at the time it occurred, and that no other engine did pass at that time, or near that time. But the evidence is not very positive upon the point, and all the witnesses who testify upon the subject testify that on the day that engine No. 9 passed that place, the wind, which was a very strong one, was blowing from the southwest — more from the west than from the south — while the plaintiff’s witnesses all testified that on the day that the fire actually occurred the wind, which was very strong, blew from a little east of south. Engine No. 9 was not attached to a regular train. The jury found from the evidence that engine No. 9 passed the place where the fire occurred on some other day, and not on the day on which the fire actually occurred. Now, although the jury may have erred in their verdict, yet, as there was some evidence to sustain every material finding thereof, the supreme court cannot, after it has been approved and sustained by the court below, who heard all the evidence, set it aside. (St. Jo. & D. C. Rld. Co. v. Chase, 11 Kas., 47.) This principle has been so often decided in this court that it must be deemed to be settled. This court has sustained a verdict of a jury, and the finding of a court, where, in the opinion of the writer hereof, the weight of the evidence was overwhelmingly against such verdict and such finding, and where, in the opinion of the writer, said verdict and said finding should have been set aside even by this court. (School District v. Griner, 8 Kas., 224; Ulrich v.Ulrich, 8 Kas., 402.) This disposes of many of the questions that might otherwise be considered as in the case.
*370 i°Ne u ence company!4 setting ares. *369 Upon the facts of the case, as found to be by the jury, was *370 there any error? We think not. Of course the defendant, in a case like this, is liable only for negligence, and the burden Provirig the negligence rests upon the plaintiff. We think,’ however, that, upon the hypothesis that is wag nof¡ engine No. 9 that’ caused the fire, the proof of negligence was sufficient. It is true that there was no direct evidence showing whether there was any defect in the engine that caused the fire. It is also true that there was no direct evidence showing whether the engine was properly managed or not. But it was shown that this engine causing the fire caused at least two fires on that same day, and probably more; and it was also shown that other engines passed on that day, and on other days prior thereto, during all that fall, without causing any fires. It was also shown by the testimony of experts — defendant’s witnesses — -that engines properly constructed, in good repair, and properly managed, seldom cause fires. But plaintiff in error objects to this kind of evidence: First, it claims that the mere production of the fires by the engines is no proof of negligence. Whether this claim is correct or not, we do not now choose to consider, or to decide; but for the purpose of this case we shall consider that it is correct. (K. P. Rly. Co. v. Butts, 7 Kas., 317.) Second, it claims that proof of negligence must be direct proof “ of some actual fact of negligence,” such as that the engine was not properly constructed, or was out of repair; that the engineer was incompetent, or unskillful, or that he managed the engine carelessly or unskillfully. This is an important question, and we cannot say that the authorities are uniform upon the question. The strongest authorities referred to by plaintiff in error in favor of this claim are the following: Gandy v. Chicago & Northwestern Rld. Co., 30 Iowa, 420, and Smith v. Hannibal & St. Jos. Rld. Co., 37 Mo., 287, 291. But these authorities hardly reach the question. The plaintiff in error also refers to the following authorities: Sheldon v. Hudson River Rld. Co., 14 N. Y., 218; Field v. N. Y. Cent. Rld. Co., 32 N. Y., 339, and Huyett v. Phila. & Reading Rld. Co., 23 Penn. St., 373. But these authorities *371 we think are rather against the claim of plaintiff in error, than for it. The first case -was an action against a railroad company for negligently setting fire to and burning the plaintiff’s building. On the trial “the plaintiff proposed to prove by a witness who lived close to the railroad, and about one-fourth of a mile from the building, that shortly before it was burned he had seen sparks, and fire thrown, from the engines used by the defendants in running their trains, through the witness’ premises, a greater distance than this building stood from the track of the railroad, and that he had picked up from the track, after the passage of the trains, lighted coals more than two inches in length. The evidence was objected to by the defendant’s counsel, and excluded by the court.” (14 N. Y., 219, 220.) Chief Justice Denio, who delivered the opinion of the court in this case, says, with regard to this evidence: “The evidence excluded had a bearing upon both branches of the case which the plaintiff undertook to establish. It not only rendered it probable that the fire was communicated from the furnace of one of the defendant’s engines, but it raised an inference of some weight that there was something unsmitahle and improper in the construction or management of the engine which caused the fire.” (14 N. Y., 222.) And the exclusion of said evidence was held to be erroneous. In the second case it was held that: “Where it is in evidence that engines properly constructed, and in good order, will not drop coals upon the track, the dropping of' coals from defendant’s engines upon the track is, of itself, evidence of negligence sufficient to charge the defendant. Under such circumstances the burden of proof is upon the defendant to show that they were not guilty of negligence.” (32 N. Y., 339.) In the third case it was held that “Where a house was set on fire by sparks from a locomotive engine, and there was evidence that the weather Avas v.ery dry and windy, and that sparks flew from the defendant’s engines to a great distance, and also set fire to several fields and fences, near the same time and place, it was for the jury to decide whether this was sufficient evidence of carelessness.” (23 Penn. *372 St., 373.) These cases hardly sustain the plaintiff in error, but rather the reverse. These cases do not require that the plaintiff should show by direct evidence some defect in the engine, or some mismanagement of the same. Indeed, in our opinion it would be extremely unreasonable to require a stranger to the company to do any such thing. The engines are all alike to him. He does not know them apart. Nor does he know when any particular engine is used, or who manages it. And when it passes at the rate of fifteen or twenty miles an hour, he could not see enough of it to ever afterward identify it. What the engine is, and how it is managed, is peculiarly within the knowledge of the company. Therefore, when the plaintiff has shown that one of the defendant’s engines has caused one or more fires, and that the ordinary working of an engine under like circumstances does not ordinarily produce such a result, or that engines properly constructed, in proper condition, and properly managed, do not ordinarily under like circumstances produce such a result, then we think the plaintiff has made out a pilma facie case of negligence; then we think the plaintiff has done enough to require the defendant to show that its engines are properly constructed, in good order, and properly managed. The following authorities we think sustain these views: Hull v. Sacramento Rld. Co., 14 Cal., 387; Ill. Cent. Rld. Co. v. Mills, 42 Ill., 407; Ellis v. Portsmouth Rld. Co., 2 Iredell, (N. C.) 138; Piggott v. Eastern Counties Rld. Co., 3 Man. Gr. & Scott, 229; S. C., 54 Eng. C. L., 229; Sheldon v. Hudson Riv. Rld. Co., 14 N. Y., 218 to 222; Field v. N. Y. Cent., 32 N. Y., 339; Huyett v. Phila. & Read. Rld. Co., 23 Penn. St., 373. Of course, upon the whole of the evidence, the preponderance thereof must show negligence on the part of the defendant, or the plaintiff cannot recover.
*373 ü Evidence of negligence. *372 ^The plaintiff in- error also claims that proof that engines had prior to the fire passed over-the road under like conditions of wind, weather, etc., without causing fires, is not proper proof that engines do not ordinarily under such circumstances cause fires. And this is claimed upon the ground *373 that, whichever way the evidence may be, it is equally injurious to the defendant; that if the evidence shows that fires had previously been caused by the defendant’s engines, the jury catches the impression that the company are in the habit of setting out fires; but if the evidence shows that no fire had previously been caused by the defendant’s engines, as in this case, then the jury catches the impression that either the engine which caused the fire, or its management, was exceptionally bad. There is a slight error, we think, in this reasoning. The plaintiff in error claims, and we suppose correctly, that an occasional fire caused by an -engine is of itself no proof of negligence; for we suppose it is true that the best engine, with the best management, does ■sometimes produce fir.es. Hence proof that an occasional fire had been caused under like circumstances, would have been no evidence against the company, but rather evidence in its favor, tending, as it would have done, to show that engines properly constructed, and properly managed, do sometimes, under such circumstances, cause fires. An uncommon number of fires would possibly, however, unless explained, be some evidence of negligence; for fit is possible that courts and juries may take notice, without proof, that engines do not very often, under any circumstances, cause fires. Proof that no fire had previously been caused by the defendant’s -engines, would certainly not have fended to prejudice the jury against the defendant. And such evidence could not •of itself in. any manner injure the defendant. We think, however, that such evidence would be some proof — slight .as it might be — that engines do not ordinarily, under circumstances like those existing in this case, cause fires. This fact can probably be proved only in two ways: first, by the -opinion of experts; second, by proof that engines had previously passed over the same road, under like conditions of wind, weather, etc., without causing fires. Both ways were resorted to in this case. To be more explicit on this subject, we would say that we do not understand that one fire alone is any evidence of negligence; but a fire under circumstances *374 under which engines do not ordinarily cause fires, is some evidence of negligence.
teofCiñ™nRy questions°and answeis. The plaintiff in error also claims that this kind of proof is not admissible, unless all the conditions of wind, weather, and everything else connected with the passage °* each °* the engines previously passing, are exactly like all the conditions connected with the passage of the engine which caused the fire; and that unless all these conditions are embodied in each question asked for the purpose of eliciting this kind of evidence, the question should not be asked, nor answered. This we think cannot be correct. If this rule were adopted it would absolutely exclude not only this kind of evidence, but all evidence depending for its force and value upon many different circumstances. No two facts were ever precisely alike. No two events that actually occur are ever perfectly parallel in all their surrounding circumstances. Endless variety pervades the universe. The whole system of reasoning from example, including analogical and inductive reasoning, is founded upon differences as well as upon resemblances. Or rather, it recognizes differences as well as resemblances,. Whenever two facts are alike in some of their essential elements, however widely they may differ in others, the partial analogy is sufficient to authorize the drawing of inferences and conclusions. We might take the most extensive induction that was- ever framed, and we should find that all the facts used as proof therein would differ from each other in some particulars, and would differ from the final fact to be proved.- All that is necessary in such a case is, that one or more of the essential elements in each of the proving facts shall be like one or more of the essential elements in the final fact to be proved. Of course, there are-in law exceptions to this rule. There are cases in law in which, for special reasons, particular facts are not allowed to be proved for the purpose of proving other particular facts, or of proving some more general fact, although logically such first-mentioned particular facts would be legitimate proof of the second-mentioned particular facts, or of *375 the more general fact. But the present case is not one of those exceptional cases. It is not necessary that every question put to' a witness shall be so broad and comprehensive that the answer when taken alone shall be evidence of some issue in the case. If all the answers to a series of questions upon the same general subject, taken together, are competent to and tend to prove some issue in the case, each answer is competent; and the question tending to elicit such answer should be allowed to be asked, and answered. It often happens that it takes the answers to a hundred or more different questions, all combined, to constitute any proof of any issue in the case; and that to take out the answer to any one of the questions would destroy the whole of the evidence as proof in the case. If evidence tends to prove any material issue in the case, or if it tends to prove a link in a chain of evidence which tends to prove any material issue in the case, it may generally be admitted. This is intended to apply to the questions put to witnesses regarding other engines passing along the road where the fire occurred without causing fires.. The answers to some of said questions, if taken alone, might not have been competent evidence in the case, but when connected with other answers, and the whole taken together, would be competent evidence.
4. Remote ana injury. There is another very important question in this case. It is, whether or not the injury to the plaintiff is not too remote to constitute the basis of a cause of action. The plaintiff in error claims that under the maxim, causa próxima, non remota spectatur, that it is. The fire from the defendant’s engine did not fall upon the plaintiff’s property. Two fires were kindled by sparks emitted from the defendant’s engine, but each was kindled on land not belonging to the plaintiff, and each was kindled on land belonging to a different owner. These two fires spread, finally uniting, and then passed northwardly over the property of several other landed proprietors, and finally reached the plaintiff’s property, about three and one-half or four'miles distant from the railroad track, and there did the damage of which the plaintiff *376 complains. After a careful examination of this question we are satisfied, both upon reason and authority, that the damage is not too remote to be recovered. We have already decided that where the fire runs thirty rods from the place where it is first kindled, and there does the damage, the plaintiff may recover. (St. Jo. & D. C. Rld. Co. v. Chase, 11 Kas., 47.) Now, if 'the plaintiff may recover when the fire has run thirty rods, why may he not recover when the fire has run forty rods, or a mile, or four miles ? Will it be claimed that the ownership of the property over which the fire runs can make any difference? If a rick of hay should be stacked thirty rods from a railroad track, on the land of A., and if another rick should be stacked just ten rods further, on the land of B., and the fire should spread from the railroad track and first burn the rick of A., and then pass on and burn the rick of B., why should not B. recover as well as A.? And why should not C., and D., and E., still beyond, also recover? While A. recovers for his loss, must B., and C., and others, set their loss down to a remote cause, and suffer in uncomplaining silence? If A. should own a field of forty acres, and the whole of it should be overrun by fire, we suppose he could recover for the whole loss; then why should not B. recover for a part of the same loss provided he, instead of A., owned the farthest twenty acres from the railroad track, and the twenty acres last overrun by the fire? , In the popular and ordinary sense, the fire, however far it may go, is one continuous fire — the same fire — and is the proximate cause of all the injuries it may produce in its destructive march, whether it go one rod, or four miles. This may not be strictly the case in a philosophical sense. A spark drops and sets fire to the grass, an inch in circumference; -this to another inch; this to another, and so on, ad infinitum. The spark is the cause of the burning of the first inch, the first inch of the second, the second of the third, and so on, ad infinitwm. The spark falling within a rod of the railroad track is not, philosophically speaking, the proximate cause of the burning of the hay-rick thirty rods distant. It is the proximate cause *377 of the burning of the first inch of grass only, and the remote cause of the burning of the hay-rick. A spark could not burn a hay-rick at such a great distance. In this sense the spark is an infinitely remote cause of the burning of the hayrick. In this sense the spark could not be the proximate cause, unless it fell upon the hay-rick and directly set it on fire. Falling one rod, one yard, or even one foot from the hay-rick, would not answer. But this sense of proximate and remote causes and effects, is not the one adopted and used by the courts. The courts use the terms in a broader and more comprehensive sense. The courts really use the terms in their ordinary and popular sense. The spark negligently allowed to escape from the engine of the defendant, is, in law, as well as popularly, the proximate cause of the burning of the hayrick thirty rods, or four miles, away. The first efficient and adequate cause, as well as every intermediate cause necessarily following from the first cause, is always held in law to be the proximate cause, unless some new cause, independent of the first cause, shall intervene between the first cause andthe-final injurious result. This is equally true where the successive events are separated by clearer and better defined outlines than they are in tlie burning of prairie grass, or a stubble field. The noted squib case is a fine illustration of this proposition. (Scott v. Shepherd, 2 Wm. Blackstone, 893.) In law, proximate and remote causes and effects do not have reference to time, nor distance, nor merely to a succession of events, or to a succession of causes and effects. A wrongdoer is not merely! responsible for the first result of his wrongful act, but he is also responsible for every succeeding injurious result whicliV could have been foreseen, by the exercise of reasonable diligence, as the reasonable, natural and probable consequence of his wrongful act. . He is responsible for any number of injurious.results consecutively produced by impulsion, one upon another, and constituting distinct and separate events, provided they all necessarily follow from the first wrongful cause. Any number of causes and effects may intervene between the first wrongful cause and the final injurious consequence; and if *378 they are such as might, with reasonable diligence, have been foreseen, the last result, as well as the first, and every intermediate result, is to be considered in law as the proximate result of the first wrongful cause. But whenever a new cause intervenes which is not a consequence of the first wrongful cause, which is not under the control of the wrongdoer, which could not have been foreseen by the exercise of reasonable diligence by the wrongdoer, and except for which the final injurious consequence could not have happened, then such injurious consequence must be deemed to be too remote to constitute the basis of a cause of action. But the plaintiff in error says: “ That if Stanford, four miles away, can recover for property lost, there is no court authorized to set a limit just where such liability shall cease, if the fire continues uninterruptedly on its journey. If he can recover it is to be regretted that the sufferers by the Chicago fire have no more responsible person than Madame O’Leary to indemnify them.” “ If some future Kansas simoon should drive from an engine a single spark by which the prairie was set on fire-, so long as it burned without intermission the railway company would continue to be responsible, and whether the state line would end the losses, God, and the supreme courts of the adjoining states and territories, only can determine.” This is a strong picture, never likely to be realized. Railroad companies do not often set fires to prairies, and they much more seldom negligently do so; and when they do, it is not often that much damage is done. ’ But put the picture as strong as the counsel for plaintiff in error has drawn it, and still' we see no sufficient reason why a wrongdoer should not pay for all the injurious consequences of his wrongful act. Why should not every person, whether far away or near, recover for losses sustained by reason of the wrongful acts of another ? Even if it should bankrupt the wrongdoer, would that be any reason for not compensating an innocent sufferer? 1 As a question of ethics and morals, as well as of law, where a great loss is to be borne by somebody, who should bear it — the innocent, or the guilty? Would it be better, more equi *379 table and just, to distribute it among a hundred iiinooent victims, than to visit it wholly upon the wrongdoer who •caused it? Possibly, if the loss were distributed, among the innocent sufferers, it would bankrupt many of them. Would that be more equitable and just than to bankrupt the guilty wrongdoer ? Railroad companies, however, are not so fearful of paying just claims against, them as they are of paying unjust claims. They are really afraid that juries will find that they caused the fires, when in fact they did not cause them; and that juries will find that they were guilty of negligence, when in fact they were not guilty of negligence. In the present case the railroad company was probably not guilty of negligence. But all these fears must necessarily subside as our state grows in population, and as a more general intelligence is diffused among the people, for then better juries may be obtained.
The views that we have expressed upon the question of proximate and remote causes and effects, may not be in harmony with the following decisions, to-wit: Penn. Rld. Co. v. Kerr, 62 Penn. St., 353; Ryan v. N. Y. Cent. Rld. Co., 35 N. Y., 210; Macon Rld. Co. v. McConnell, 27 Geo., 481. And yet there may be enough to distinguish this case from the two last cases cited, and possibly from the first. But we think our vie'Ws upon this question are in entire harmony with reason, and with the great weight of authority, both in this country and in England. See the very able and exhaustive opinion of Chief Justice Lawrence in the case of Fent v. Toledo, Peoria & Warsaw Rld. Co., 59 Ill., 349 ; 4 Chicago Legal News, 326; 1 Redf. Am. Rly., Cases, 350. See also, the very able and elaborate opinion of Chief Justice Dixon, delivered on a motion for a rehearing in the case of Kellogg v. Chicago & N. W. Rld. Co., 26 Wis., 223, 258, et seq., and the cases cited and reviewed in these two cases. Also, see the ease of Perley v. Eastern Rld. Co., 98 Mass., 414, 418, referring to and disapproving the New York case.

*380
5. competent incompetent111 witness. Practice.

«.“Market-value” —term considerea.

*379 A few other questions in this case remain to be considered. The evidence with regard to the value of the corn was intro *380 duced to the jury without objection, and therefore there was no error in permitting it to go to the 0 jury. It was competent evidence, as evidence,, whether the witness was a competent witness to testify to the value of corn or not. No motion was made to strike it out, and no instruction was asked with regard to it; hence it properly went to the jury for their consideration. Even if • it were afterward shown, upon cross-examination, that the witness who testified to the value of the corn upon his examination in chief, was not a competent witness for that purpose, yet we should not reverse the judgment for that reason merely. If a party allows competent evidence of an incompetent witness to go to a jury without objection, he .should not afterward complain of the finding of the jury thereon. Not objecting to the evidence, is substantially saying that the party is satisfied with it. But was the witness incompetent ? Simply not knowing of any sales of corn, may not have rendered the witness wholly incompetent. There . ... 1 . v . . . may have been no sales m that region. I here may have been no market-value for corn there. If so, then some other criterion of value must be adopted. It is not necessary in any case that there should be an actual market-value for an article, in order to entitle the owner thereof to a recovery for its destruction. Suppose a rod of railway track, or a shade tree, or a fresco painting on the walls or ceiling of a house, or a bushel of corn on the western plains, should be destroyed: could there be no recovery for these articles, simply because there might be no actual market-value for the same? The instruction of the court, with regard to the recovery for the market-value of the various articles destroyed, certainly could not have prejudiced the rights of the plaintiff in error. The instructions given by the court below we think were substantially correct. Those refused, so far as they embodied the law of the case, and so far as they were necessary in the case, were substantially given in the general charge.. It must be recollected, however, that the special findings of the jury rendered some of the instructions, both given and *381 refused, irrelevant; and whether such instructions were right or wrong, the giving or refusing of them could not be substantial error. Some of the instructions given were repeated, verbatim, which was not strictly correct, yet we cannot say that such a thing materially predjudiced the substantial rights of the plaintiff in error. The second instruction asked for by the plaintiff below, and given by the court, is hardly as strong as the plaintiff in error claims that it is. But it is pretty strong, and might in some cases be erroneous. But in this case (upon the hypothesis that it was not engine No. 9 that caused the fire,) where all the evidence of negligence as to the engine causing the fire is One way, and against the plaintiff in error, the instruction cannot be so erroneous as to prejudice the rights of the plaintiff in error. The fifth instruction asked for by the plaintiff below, of which the plaintiff in error complains, was not given by the court below, but was refused, and therefore such instruction could not have materially affected the substantial rights of the plaintiff in error. It is not necessary for us' to mention more particularly the other evidence, or the other instructions, as the remarks we have already made will sufficiently cover them.
The judgment of the court below is affirmed.
All the Justices concurring.