## JOHN GIBBS v. ANNIE L. GIBBS.

1. TRIALS; WEIGHT OF EVIDENCE; *Reviewing Findings of Fact.* Where an action has been tried by a court without the intervention of a jury, and the court makes special findings, the findings of the court are as conclusive in the supreme court as the verdict of a jury; and where each finding of fact is sustained by some evidence, this court will not order the findings set aside, nor grant a new trial, although the evidence offered is of the most unsatisfactory character, and although thereon this court, if sitting as a *nisi prius* court, might reach different conclusions of fact.

2. DIVORCE; *"Extreme Cruelty;" Conflicting Testimony.* Where the conduct of the husband is such, that the life or health of the wife may be endangered by his acts toward her, and upon the evidence in the case the district court has granted a decree of divorce, the supreme court will not, upon review of the proceedings, reverse such judgment because the evidence is contradictory and conflicting.

*Error from Wyandotte District Court.*

ACTION for divorce, brought by *Annie L. Gibbs.* Trial, and judgment, at September Term 1874 of the district court. The findings and judgment are as follows:

(*Title.*) * * * "The court doth find, from the plaintiff's petition, and from the evidence adduced, that said defendant John Gibbs and said plaintiff were duly married on the 3d of April 1871, as in said plaintiff's petition averred, and that said plaintiff is now, and has been for more than one year preceding the filing of her petition herein, a *bona fide* resident of the county of Wyandotte, and state of Kansas, and has in all respects demeaned herself toward said defendant as a true and loving wife should do — but that said defendant has been guilty of extreme cruelty toward the said plaintiff, as charged in her petition herein filed.

"It is thereupon adjudged and decreed by the court, that the marriage relation heretofore existing between the said parties be and the same is hereby set aside and wholly annulled, and the said parties wholly released from the obligations of the same. And it is further 'decreed that plaintiff be restored to her maiden name of Annie L. McCoy. And it is further ordered, adjudged, and decreed, that the said defendant do pay to the said plaintiff for her reasonable alimony, the sum of three thousand dollars, as follows, to-wit: one-fifth thereof, $600, on or before the 25th of September 1875; and one-fifth, $600, in one year from the date of the same; $600 in two years; $600 in three years, and $600 in four years, from the date aforesaid, without interest; and that in case any of the said sums remain unpaid for ten days after the same becomes payable, an execution shall issue against said defendant in favor of said plaintiff to collect the same. It is further ordered and adjudged, that the defendant pay the costs of this suit, and that in default thereof execution issue therefor."

From this decree, the defendant appeals, and brings the record here for review.

*Cobb & Alden,* for plaintiff in error.

*Isaac B. Sharp,* and *Stillings & Fenlon,* for defendant in error.

The opinion of the court was delivered by

HORTON, C. J.: The error complained of in this case is, that the proofs do not sustain the finding of the district court. The writer of this opinion believes that the marriage contract is one which should be sundered only for causes that

render its longer continuance destructive of social order, and never for reasons that merely make it an inconvenience to one of the parties. He agrees with the counsel for the plaintiff in error, that "marriage is a contract of so sacred a nature, so vital to our enlightened society, that parties once having entered into the relation, our courts ought not for light and transient reasons, for mere petulance and rudeness, allow the contract to be broken." If this case was here for trial *de novo*, instead of review, it may be that a decree of divorce upon all the evidence would be denied. But the many adjudications of this court, as to the effect of the findings of a trial court, and a judgment thereon, forbid any interference in the decision rendered in this cause. It is a well-established rule of this court, that the verdict of a jury will not be disturbed if there is any testimony to sustain it. It is also settled, that the findings of a court, upon the questions of fact in a case, are as conclusive in this court as the verdict of a jury. Where there is some testimony sustaining each finding, and the trial court has had the opportunity of hearing the testimony from the lips of the witnesses, and of seeing the persons who utter it, this court will not order the findings set aside, nor grant a new trial, although the evidence offered is unsatisfactory, and although thereon, this court, sitting as a trial court, might reach a different conclusion. We are certainly not in a condition to say, after a careful reading of all the testimony, that any finding is wholly unsupported by evidence; and we should be able so to do, to be justified in disturbing the findings or judgment of the court below. *Hobson v. Ogden's Executors*, 16 Kas. 388; *Carson v. Kerr*, 7 Kas. 268; *Ulrich v. Ulrich*, 8 Kas. 402; *Hyde v. Bledsoe*, 9 Kas. 399; *K. P. Rly. Co. v. Kunkel*, 17 Kas. 145, and the cases there cited.

It would occupy much space to review, or to incorporate herein all of the evidence produced upon the trial, and we will content ourselves with a brief mention of some of the facts testified to on the part of the defendant in error. Gibbs, the plaintiff in error, was a farmer in good circum-

stances, and was worth about $20,000. His wife was a farmer's daughter, of fair intelligence, and lived before the marriage in the same neighborhood, and near the residence and farm of plaintiff in error. At the time of the marriage, the wife was possessed of no property, and brought none to her husband from any source. They lived together as husband and wife, on the farm of plaintiff in error, in Wyandotte county, from 6th April 1871, to May 16th 1872, a little more than thirteen months. The house in which they lived was the home of Mr. Gibbs prior to the marriage. Plaintiff in error carried on an extensive farming and wood-chopping business, and employed from two to six men as help, making from four to eight or nine in the family, usually six or seven. The husband and wife had a quarrel about August 1871, and came near having a separation. The cause, as stated by Mrs. Gibbs, was, that he "worried her so." She called his conduct brutal. Her health was good when she married, but soon became very bad, from disease of the womb. One time, while thus diseased, Mrs. Gibbs refused to sleep with her husband, and he compelled her to do so, and used such language toward her at the time, that the witness hesitated to repeat it to the court. Mr. Gibbs accused his wife of being too intimate with hired men, and these accusations were sometimes made when they were alone, and sometimes in the presence of others. On one occasion Gibbs attempted to pull his wife out of bed, to dress, before a hired man in the room. He got her almost out, but she prevented him by catching hold of the bed-rail. Mrs. Gibbs did most of the work for the family in an open house full of cracks, and had to carry water for the house a long distance, about two hundred yards. A physician testified that if Mrs. Gibbs had continued to carry water, as she stated she had to do, it would have resulted in her death, considering the disease with which she was afflicted. When Mrs. Gibbs asked her husband to furnish a physician, he would argue the case, and would say he did not think she needed one, but would get better soon; and she had no physician to attend

her while living with her husband. When any of the hired men helped around the house, Gibbs would say he did not hire men to fool around the house. On one occasion, when Mrs. Gibbs asked her husband to get wood for the house, he said, "Any old woman who could not pick up wood enough, ought to freeze to death." In the winter of 1871, Gibbs called his wife "a damned liar," and frequently used in her presence to others very obscene and indecent expressions. He said to her one day in the hearing of a witness, "that if she left him, he would follow her and boot her every step of the way back."

The above is a summary of the most important of the testimony; and we must hold it sufficient to sustain the finding of the trial court, that the plaintiff in error was guilty of extreme cruelty. All of the law-writers find it difficult to lay down any affirmative definition of legal cruelty. The courts have been equally cautious, considering it more safe not to travel much beyond negative descriptions. 1 Bishop on Mar. and Div. 715–717. In this class of cases, precedents do little more than inform the understanding, and assist the judgment. Perhaps more in this, than any other character of causes, the conclusion to be reached must largely depend upon its own peculiar circumstances, and the character, habits, and disposition of the parties. The authorities generally agree this far, that whatever may endanger the life or health of the party is legal cruelty. If therefore, the evidence in this case shows that the health of the wife was endangered by the acts and conduct of the husband, there was evidence sustaining the finding and judgment of the court. We have referred to the violent and indecent expressions of the plaintiff in error, to and in the presence of his wife, not for the purpose of intimating that these alone constitute cruelty, within any legal sense, but because the use of such language is important on the question of cruelty, and in determining the acts and habits of the husband. The frequent use of such expressions would induce any court more readily to believe evidence as to acts that might endanger the health of the wife. In view

of her bad health, the accusations to his wife, in the presence
of others, "that she was too intimate with the hired men,"
and the act of personal violence committed upon her, in the
attempt to pull her, against her will, from the bed, to dress
before a hired man, were acts in themselves of such character
as to border strongly upon extreme cruelty.   More serious
however, were the acts and conduct of Gibbs in compelling
his wife to sleep with him against her wishes, when she was
diseased; in failing and refusing to furnish her suitable medi-
cal attendance, which he was amply able to provide; and in
having her, at a sacrifice of her health, attend to so many
household duties in a house of the character occupied by the
family, and especially in rendering it necessary for her to
bring water the long distance she was required.   These
various acts on the part of the husband might endanger the
health of the wife.   What would impair health, would en-
danger life.   The acts would reasonably and fairly have this
effect.   Mrs. Gibbs stated that the conduct of her husband
was such as to render her life intolerable.   She continued to
grow worse with her disease as long as she remained with
her husband, and at the time she left, she was very severely
afflicted with leucorrhœa, and ulceration of the womb, and
also with displacement of that organ.   She was so bad that
the physician who examined her, and testified at the trial,
stated that he did not think she ever would be well.   During
their cohabitation together, the husband well knew of the
disease of his wife, and although he made for her some tea of
herbs, got her some pills, and a bottle of medical discovery,
yet he directly refused, as Mrs. Gibbs testified on her recall
to the stand, to get a physician when she needed one and
asked for one.   It is cruelty in a husband, having the means,
to withhold medical assistance in sickness, while he is able
to provide it. *Evans v. Evans*, 1 Hag. Con. 35; 4 Eng. Eq.
310; *Dysart v. Dysart*, 1 Robertson, 106, 111; 1 Bishop on
Mar. and Div. 735.   Upon all the evidence of the defendant
in error, and with our view of the law, we cannot now dis-
turb the judgment.   That the plaintiff in error denied fully

all the allegations of the petition, both in his answer and upon the witness-stand, and introduced numerous witnesses to sustain his side of the case, is unavailing here. "The due administration of the law demands, and in the long run the most satisfactory and the most complete justice will be secured by leaving, the settlement of questions of fact to the tribunals which see and hear the witnesses." *K. P. Rly. Co. v. Kunkel*, supra. The judgment will be affirmed.

All the Justices concurring.