No. 34,750

The La Harpe Fuel Company, *Appellee*, v. The City of Iola, *Appellant.*

(105 P. 2d 900)

Opinion filed October 5, 1940.

*Burney Miller, J. S. Amick, J. D. Conderman,* all of Iola, and *Paul Pinson,* of Tulsa, Okla., for the appellant.

*Stanley E. Toland* and *Frederick G. Apt,* both of Iola, for the appellee.

The opinion of the court was delivered by

Allen, J.: This action was for damages for breach of contract. From a judgment in favor of plaintiff, defendant appeals.

On the 8th day of March, 1932, the parties to this action entered into a written agreement under which the plaintiff company agreed to sell and the defendant city agreed to purchase fifty million cubic feet of natural gas per year at the price of twenty-five cents per thousand cubic feet. The contract was to remain in force for five years. The contract provided:

"It being understood that second party has already contracted with the Oklahoma Natural Gas Corporation for the purchase of a minimum of one hundred ten million cubic feet of natural gas per year with a minimum during the months of May, June, July, August, and September of one hundred twenty-five thousand cubic feet per day, and

"It is agreed that should the requirement of the city not equal the said fifty million cubic feet per year, over and above the minimum requirements of the Oklahoma Natural Gas Corporation contract, then the amount to be purchased under this contract shall be reduced accordingly.

"It is also provided that should the requirements exceed the said fifty million cubic feet per year over and above the said minimum of the Oklahoma Natural Gas Corporation, the second party may purchase the same from other parties, or, if it does not wish to do so, the additional requirements may be added to the said fifty million minimum.

"Provided: also that adjustments of the amounts of gas taken under the said two contracts shall be equalized as nearly as can be each month."

It was further provided that "this contract shall be given priority over any and all sales or use of gas for industrial purposes and other contracts made subsequent hereto."

The case was tried on plaintiff's second amended petition. After setting forth the terms of the contract, the petition alleged:

"3. That by the terms of said contract between plaintiff and defendant, the purchase of gas by the defendant from the plaintiff for the purpose of supplying the inhabitants of the defendant city for domestic and other uses and consumption, was subject only to the purchase by the defendant from the Oklahoma Natural Gas Corporation of a minimum of 110 million cubic feet of natural gas per year, with a minimum during the months of May, June, July, August and September of 125 thousand cubic feet per day, and said contract between plaintiff and defendant, by its own terms, was given priority over any and all sales or use of gas for industrial purposes and other contracts made subsequent to the date of said contract.

"That the volumes of gas, by months, which the defendant city purchased and received from the Oklahoma Natural Gas Corporation and its assigns, and from the plaintiff, are set forth in exhibit C to the amended petition, which exhibit is made a part hereof by reference, with the following results, to wit:

| Year | Volumes of gas delivered by Oklahoma Natural Gas Corporation and its assigns into city lines | Volumes of gas delivered by the La-Harpe Fuel Company into the city lines |
|---|---|---|
| March 5, 1932, to March 5, 1933........ | 257,991,000 cu. ft. | 35,747,400 cu. ft. |
| March 5, 1933, to March 5, 1934........ | 235,302,000 cu. ft. | 33,576,200 cu. ft. |
| March 5, 1934, to March 5, 1935........ | 257,718,000 cu. ft. | 30,733,600 cu. ft. |
| March 5, 1935, to March 5, 1936........ | 267,399,000 cu. ft. | 37,892,400 cu. ft. |
| March 5, 1936, to March 5, 1937........ | 270,373,000 cu. ft. | 37,001,000 cu. ft. |
| Grand totals..................... | 1,288,783,000 cu. ft. | 174,950,600 cu. ft. |

"6. That at all times during the term of said contract, the plaintiff maintained a sufficient supply of gas to comply with all of the requirements imposed upon plaintiff by the terms of said contract.

"7. That the amount of gas which the defendant should have taken from the plaintiff during the first year of said contract term, but which it failed and neglected to take, amounts to 14,252,600 cubic feet.

"8. That plaintiff was obliged to keep said amount of 14,252,600 cubic feet of natural gas available for the use of the defendant in supplying the inhabitants of the defendant city with gas for domestic and other uses and consumption. That because of said contract, plaintiff was unable to make any other use of said gas because of the requirements imposed upon plaintiff by said contract, and plaintiff has had no other market or use for said gas and will have no other market or use for said gas.

"9. That as hereinbefore set forth, the defendant city failed and neglected to take from plaintiff 14,252,600 cubic feet of natural gas during the first year

of the contract, which amount the said defendant had contracted and agreed to take and receive under the contract of the plaintiff at a price of 25 cents per thousand cubic feet. That by reason of the failure of the said defendant city to take said 14,252,600 cubic feet of natural gas during the first year of said contract term, as it had contracted and agreed to take, and which the plaintiff was ready, able and willing to furnish said defendant city, the plaintiff has been damaged in the sum of $3,563.15, which amount is the sum total of the value of said 14,252,600 cubic feet of gas figured and based upon the contract price thereof, to wit: 25 cents per thousand cubic feet. That the plaintiff is entitled to judgment against said defendant for the said sum of $3,563.15 together with interest thereon at the rate of 6 percent per annum from March 7, 1933, until paid.

"10. That on June 17, 1938, plaintiff filed with the city of Iola a verified claim in writing demanding payment for said 14,252,600 cubic feet of natural gas, which amount, with the respective amounts that the defendant had contracted and agreed to take and receive under the contract of the plaintiff during the other four years of said contract term, as set out in the other causes of action contained in this second amended petition, totals 75,049,800 cubic feet. That the defendant city of Iola, Kansas, through its board of commissioners has failed for more than thirty days to take any action on the allowance or disallowance of said claim, and that because of such action on the part of the defendant, the plaintiff is now entitled to sue thereon and recover its damages. That a true copy of said claim appears as exhibit E to the amended petition herein, and by reference the same is incorporated herein."

The amount of gas which it was alleged the defendant failed and neglected to take during the second, third, fourth and fifth year of the contract was set forth in separate paragraphs. Plaintiff asked judgment under the first cause of action covering damage for the first year of the contract in the sum of $3,563.15; under the second, $4,105.95; under the third, $4,816.60; under the fourth, $3,026.90, and under the fifth, $3,249.75.

Defendant's demurrer to the petition was sustained as to the first cause of action on the ground that the claim for the first year was barred by the statute of limitations, but was overruled as to the other paragraphs.

A jury being waived, the cause was tried to the court, and judgment rendered in favor of plaintiff in the sum of $6,190.75.

On this appeal many errors are assigned.

1. It is asserted the plaintiff's petition failed to state a cause of action upon a definite theory, and that the trial court erred in not requiring the plaintiff to amend its petition.

We are confronted with an elaborate argument that the petition was not framed upon a definite theory. That question usually arises

when there is doubt whether the action sounds in tort or contract. (*Sluss v. Brown-Crummer Inv. Co.,* 137 Kan. 847, 22 P. 2d 965; *Kipp v. Carlson,* 148 Kan. 657, 84 P. 2d 899; *K. P. Rly. Co. v. Kunkel,* 17 Kan. 145, 166.) The present action is in contract. The petition was formulated upon a definite theory.

The contention as to the amendment is based on an error in plaintiff's petition. The contract between plaintiff and defendant upon which the action was instituted was dated March 8, 1932. The contract contained the following clause:

"This contract shall remain in full force and effect for five (5) years from and after June 24, 1932."

In the copy of the contract attached to and made a part of plaintiff's original petition, the foregoing clause appeared thus:

"This contract shall remain in full force and effect for five (5) years from and after date hereof."

Thus the life of the contract was from June 24, 1932, to June 24, 1937. The original and amended petitions were framed on the supposition that the contract ran from March 8, 1932, to March 8, 1937. While the original petition, the first amended petition and the second amended petition were attacked by motions and by demurrer, the discrepancy as to the effective date of the contract was not called to the attention of the court. The error was first disclosed in defendant's answer. Thereupon the plaintiff filed a reply, which stated:

"1. That through inadvertence the effective date of plaintiff's contract with defendant has heretofore been alleged as March 8, 1932, when in fact its effective date was June 24, 1932, and for a term of five years from that date. That with this modification, exhibit A, attached to plaintiff's amended petition and by reference made a part of plaintiff's second amended petition, is a true copy of said contract. Exhibit one to the answer also appears to be a true copy thereof.

"2. That because of the change in the allegation of the effective date of plaintiff's contract, as stated above, in order to fully show the volumes of gas taken by defendant, it is necessary to supplement exhibits C and D to plaintiff's amended petition to show the volumes of gas taken by defendant from March 5, 1937, to June 24, 1937. That such supplements to exhibits C and D are hereto attached and made a part hereof."

The case was tried on the issues thus framed.

Motions to strike and to make definite and certain rest in the sound discretion of the trial court, and unless it appears the ruling affects a substantial right and in effect determines the action, it

is not appealable. (*Nelson v. Schippel*, 143 Kan. 546, 56 P. 2d 469.) Under the second amended petition upon which the case was tried, the defendant and the court had fair notice of the facts constituting the plaintiff's cause of action. As no prejudice to any substantial right of the defendant appears in the record, the error alleged is without foundation.

2. It is contended the contract sued on is void for the reason that the record fails to show a certificate of convenience was issued to the plaintiff. But is the defendant in a position to raise that question? The question was not raised in defendant's answer; on the contrary, the execution of the contract was admitted and the contract pleaded. Moreover, the court made general findings of fact. The court made no findings as to whether the plaintiff had or did not have such certificate, or whether it was a corporation required by law to have such certificate. The court is presumed to make findings of all facts upon all questions necessary to sustain the judgment. No findings having been made and none requested, the question was no longer in the case. (*Snodgrass v. Carlson*, 117 Kan 353, 232 Pac. 241.)

Defendant also contends the contract is void because Ruth Hoyt, a stockholder, director and secretary of the plaintiff company, was the wife of C. L. Hoyt, commissioner of finance and revenue of defendant at the time the contract was executed. It was admitted that the one share of stock owned by Ruth Hoyt was acquired by her before her marriage.

Under our statute G. S. 1935, 23-204, a married woman may carry on a trade or business on her sole and separate account. As there was no evidence of fraud, overreaching or unfair dealing, and as the defendant treated the contract as valid and binding during the entire five years, the defendant cannot now avoid its obligations by contending the contract is contrary to public policy and void.

It is also urged that the contract sued on "was void from the beginning because it lacked one of the essential elements of a contract, namely, possibility of performance." The argument runs: The contract sued on was subject to the minimum required to be taken by defendant under the Oklahoma Natural Gas Corporation contract; as that contract was dated March 5, the period of time in which that minimum was required to be used was between March 5 of one year and March 5 of the next year. The contract sued

on was effective June 24. Defendant states: "Because the dates upon which the annual minimum is determined do not coincide, there is no way of making the minimum used from the La Harpe Fuel Company dependent upon the minimum used from the Oklahoma Natural Gas Corporation."

On this point the memorandum decision of the trial court states:

"The fact that the La Harpe Fuel Company contract began to operate on a date different than the time of the beginning of the operation of the Oklahoma Natural Gas Corporation contract, is immaterial as the contract of the plaintiff provided that the amount of gas taken under the said two contracts 'shall be equalized as nearly as possible each month,' and if the said amount had even approximately been equalized each month as to the amount to be taken by each company as provided in said separate contracts, it would be immaterial as to when any particular year should begin, for if the amounts were adjusted each month, then for a period of one year taken at any time during the life of the plaintiff's contract, if the city required a sufficient amount, the Oklahoma Natural Gas Corporation would first have its 110 million, and then the balance of the amount of gas up to 50 million cubic feet, would have been taken from the plaintiff. This suit resulting from an alleged breach of the plaintiff's contract which became operative June 24, in the determination of this case, the year must be figured on yearly periods beginning on that date each year thereafter from the beginning of the contract.

"From the evidence, the court is forced to the conclusion that the defendant city, its officers and employees, were not sufficiently particular, or apparently did not keep in mind the provisions of said contract, and thus the city did not properly adjust the amounts taken each month under the respective contracts, and the amount of gas taken by the city from the Oklahoma Natural Gas Corporation far exceeded the minimum of 110 million cubic feet annually used by the inhabitants of said city for domestic and other uses and consumption, and concerning which excess, the exact figures are herein set forth."

Manifestly the contract was not invalid for any of the reasons assigned.

3. It is contended that the claim against the city was not in proper form, and that the delay in filing such claim promptly "constituted such inexcusable delay, or laches, as to estop him from claiming damages in this action." We find no merit in these contentions.

It is also urged that plaintiff is not entitled to recover, as it was unable to furnish the amount of gas called for by the contract. There was testimony which tended to show the plaintiff was ready, able and willing to supply the amount of gas specified in the agreement, and as the trial court so found, there is nothing for this court to review.

4. It is asserted the court erred in holding that the plaintiff

proved a cause of action for damages. In the memorandum decision and findings of the trial court, it was stated:

"The defendant further contends that the plaintiff should not recover because he did not have a sufficient amount of gas to comply with the terms of said contract, and that said city at all times had the gate valves open and took all of the gas that plaintiff was able to deliver at the said city's gate.

"The evidence shows and the court so finds that the plaintiff had on hand a sufficient volume of gas, and that his pipe lines, compressor equipment and other mechanical means needed for the delivery of said gas, were sufficient in quantity and quality to enable the plaintiff to deliver to the defendant city the full 50 million cubic feet of gas each year during the life of said contract, according to the terms and provisions in said contract.

"The evidence shows that during the period covered by said contract, that the plaintiff drilled twenty-three (23) additional wells and equipped the same, and that plaintiff at the date of the termination of said contract had on hand and available more gas than it had at the date of the beginning of said contract. The evidence further shows that when gas was not being taken from the plaintiff, it was because of the fact that the defendant city's officers and employees had closed the gate valves or so adjusted the regulators that the plaintiff's gas was prevented from entering the city's lines, because of an attempt on the part of defendant city, as it claimed, to avoid taking a larger amount of gas from the plaintiff company than was provided for and called for in the contract between the plaintiff and the defendant, and also in order to make certain that the full 110 million cubic feet of gas was taken from the lines of the Oklahoma Natural Gas Corporation according to the terms of its contract, which minimums were referred to in the contract between plaintiff and defendant.

"The court further finds that although the plaintiff, after the termination of its five-year contract with defendant, for the year beginning July 6, 1937, sold and delivered to the defendant city under another contract, 51,417,000 cubic feet of gas, still the plaintiff thereafter had more gas than it had at the time of the beginning of the five-year contract with defendant.

"The evidence further shows that gas is migratory. If the same is not permitted to flow from the wells into pipe lines, it will, to a considerable extent, get away and be lost.

"The evidence shows and the court finds that the plaintiff has suffered damages on account of the refusal of the defendant to take and pay for said gas as provided in the contract, and that the measure of said damages would be the difference between the contract price which the defendant agreed to pay for said gas, and the market price of said gas if there were any market for the same.

"The evidence in this case clearly shows, and the court finds that there was no other market for the gas not taken by defendant; that while the evidence shows that the plaintiff was selling some gas at La Harpe, Gas City, and also to some of the people occupying dwelling houses in the vicinity of its pipe lines, that the plaintiff has at all times had on hand and available, and was ready, able and willing to supply much more gas than would have been needed

to have supplied said last above-named parties, and also to have supplied the defendant city with the volume of gas which defendant city had contracted to purchase.

"Further, it is shown by the evidence that the volume of gas required and purchased by other customers at La Harpe, Gas City, and along the pipe line, was much larger at the commencement than at the termination of the five-year contract with defendant, and that the available market for the gas of the plaintiff has been during all of said time, materially growing less.

"The evidence shows and the court finds that the amount of gas taken by the defendant city for each consecutive year, beginning June 24, 1933, and ending June 24, 1937, is as set forth in the following tabulation:

|  | Taken from Okla. Nat'l Gas Corp. | Taken from La Harpe Fuel Co. |
|---|---|---|
| 6-24-33 to 6-24-34 | 118,242,000 | 23,323,200 |
| 6-24-34 to 6-24-35 | 101,480,000 | 41,859,300 |
| 6-24-35 to 6-24-36 | 117,688,000 | 31,671,000 |
| 6-24-36 to 5-5-37 | 77,947,000 |  |
| 6-24-36 to 6-24-37 |  | 41,167,000 |

"From the above, it will be seen that for the year beginning 6-24-34, the city failed to take the minimum amount from the Oklahoma Natural Gas Corporation, but that for the year beginning June 24, 1933, and for the year beginning June 24, 1935, the city took more than the minimum amount as provided in said contracts from the Oklahoma Natural Gas Corporation.

"The contract of the defendant city with the Oklahoma Natural Gas Corporation expired by its own terms on March 5, 1937, from which date to June 24, 1937, the contract of the La Harpe Fuel Company took priority over any and all other contracts, and the amount to be taken from said La Harpe Fuel Company was only limited by the 50 million cubic feet maximum amount of gas as provided in its contract, or whatever amount thereof was needed by the city. However, the evidence further shows that during the fraction of a year from June 24, 1936, to March 5, 1937, the date when the Oklahoma Natural Gas Corporation contract expired, the amount of gas taken from the Oklahoma Natural Gas Corporation was 77,947,000, and that from March 5, 1937, to June 24, 1937, the time when the La Harpe Fuel Company contract took priority, the amount of gas taken from the Oklahoma Natural Gas Corporation, under a new contract, was 24,280,000, and that during the period from June 24, 1936, to June 24, 1937, the amount of gas taken from the La Harpe Fuel Company was only 41,167,000. During this year, according to the La Harpe Fuel Company contract, the amount taken under its contract should have been 50 million. Thus the shortage of gas not taken by the defendant city from the La Harpe Fuel Company during said last year was 8,833,000.

"From the above, it will be seen that the total shortage of gas not taken by the defendant city from the plaintiff, which they should have taken according to the terms of the contract, is as follows:

|  | Cubic feet |
|---|---|
| From 6-24-1933 to 6-24-1934 | 8,242,000 |
| From 6-24-1935 to 6-24-1936 | 7,688,000 |
| From 6-24-1936 to 6-24-1937 | 8,833,000 |
| Total | 24,763,000 |

"The court finds that as there was and has been no market for said gas of the plaintiff, that the damages sustained by the plaintiff on account of the failure of the defendant to take said gas as provided in the contract, is the sum of 25 cents per thousand cubic feet; that its damage is in the total sum of 6,190.75."

To entitle the plaintiff to recover, it was not necessary to establish a market value for the gas. (*A. T. & Santa Fe Rld. Co. v. Stanford*, 12 Kan. 354, 380; *Hollinger v. Railway Co.*, 94 Kan. 316, 146 Pac. 1034.)

In *Amarillo Oil Co. v. Ranch Creek Oil & Gas Co.*, (Tex. Civ. App.) 271 S. W. 145, which was an action for the breach of a contract to furnish gas, the measure of damages was stated:

"In an action by plaintiff against defendant for breach of contract, under which plaintiff was to furnish gas from its well to a pipe-line company, and receive a certain sum therefor from defendant, where uncontradicted evidence showed that plaintiff had no available market for gas other than that afforded by the contract, and no intrinsic value was shown, contract price of the gas, less expense of connecting well with pipe line, is proper measure of damages." (p. 146.)

We think the measure of damages as found by the trial court was correct.

We have examined other questions raised, but they do not call for extended discussion. The city was authorized to enter into the contract (G. S. 1935, 12-842), and as we find no error in the record the judgment must be affirmed. It is so ordered.