The judgment of the district court will be affirmed.

All the Justices concurring.

---

ST. LOUIS, KANSAS CITY & NORTHERN RAILWAY CO. v. G. W. PIPER.

1. LIABILITY OF RAILROAD COMPANY, *as Carrier of Stock; Contract; Negligence.* The St. Louis, Kansas City & Northern Railway Co., owning and operating a line of railroad from Kansas City to Mexico, and there connecting with another road running to Chicago, made a contract to "forward" certain cattle from Kansas City to Chicago, stipulating therein that the shipper should "take care of the cattle while on the trip," and that "it and connecting lines over which such freight might pass should not be responsible for any loss, damage or injury which might happen in loading, forwarding or unloading, by suffocation, * * * or by any other cause except *gross* negligence," and that "it and such connecting lines should be deemed merely *forwarders,* and not common carriers, and only liable for such loss * * * as might be *gross* negligence only, and not otherwise:" *Held,* that said St. Louis, Kansas City & Northern Railway was liable as a *carrier,* for the transportation the entire distance, and was responsible for any loss or injury occurring from *ordinary* negligence, whether such negligence was on its own or a connecting line.

2. TRIAL BY COURT; *General Finding; Conflict of Testimony.* Where the case in the district court was tried before the judge without a jury, and

no special findings of fact were made, but only a general finding, and judgment for the plaintiff, and there was some testimony tending to show negligence, this court will not reverse the judgment, although such testimony was not very conclusive, and although there was strong conflicting testimony.

*Error from Douglas District Court.*

ACTION by *Piper* as plaintiff to recover from the *St. L., K. C. & N. Rly. Co.*, defendant, "his damages sustained by reason of defendants failing to transport cattle of the plaintiff from Kansas City to Chicago, as it agreed to do by its written contract of November 27th 1872, with him, said loss accruing on 18 head of said cattle, and consisting in loss of time, expense of man with cattle, extra feed bill, and damage of cattle by driving them, and loss in market price, the market having failed while the cattle were detained by defendant." Answer, general denial. The written contract, and the material facts in the case, are sufficiently set forth in the opinion. The action was tried before the district court, at the October Term 1873. Finding and judgment for plaintiff, and the *Railway Company* brings the case here on error.

*Pratt & Ferrey*, for plaintiff in error:

1. The contract in nowise tended to show a liability on the part of the Railway Company for loss or damage happening beyond its own line. By its terms the St. L., K. C. & N. Rly. Co. undertook simply the duties of a forwarder; at least beyond its own line. These duties it performed by delivering the cattle at Mexico to the C. & A. Rly. Co., the next connecting carrier in the line of transit from Kansas City to Chicago by way of Mexico and Louisiana. 12 Johns., 232; 2 Redf. on Rlys., 114; 16 Wal., 318.

2. The Railway Company not being by law a common carrier beyond its own line, no reasons of public policy can intervene to prevent its stipulating, in the contract by which duties are assumed beyond its line, for such exemptions from liability as may be agreed upon. In the contract in question it was expressly agreed that this company should only be

liable for such loss, damage or injury, as might be occasioned by *gross negligence*, and not otherwise. If this court should construe this contract as imposing upon this company a liability for damage occurring beyond its own line, still there could be no recovery in this case without showing that the damage sustained was caused by gross negligence of this company, or of the connecting line. And upon the party claiming to recover devolved the burden of showing negligence. (8 Kas., 623.) There was no proof of negligence of any degree or kind. The delay at Louisiana was caused by the formation of an ice gorge in the Mississippi river, and was simply an act of God. The unloading the cattle at Louisiana, and not taking them over the river the night of the arrival there, was, beyond any question, because Piper thought that the cattle had been a long time without water and feed, and did not wish to go on without feeding and watering them. On the direct examination of Piper, he testified as follows: "When we got to Louisiana the cattle had been on the train 25 or 26 hours, *which is considered a long time without feed.*" On his cross-examination, he says: "I talked with Murray about sending the cattle on that night. He expressed himself anxious for me to stay over at Louisiana. *I told him that the cattle had not been fed or watered for a long time,* and he said he had rather I stayed over there than go on that night. He did not tell me I had better go over the river that night." This testimony of defendant determines two facts: First, that Piper thought that his cattle ought not to go beyond Louisiana without being fed and watered. Second, that Murray, the agent of the C. & A. Rld. Co. at that point, did not refuse to transport the cattle over the river that night, but simply expressed his preference that Piper should stay over at Louisiana that night. The inference is obvious, that if Piper had desired to go on that night he could have done so. What evidence is this of gross negligence, or of any negligence whatever, on the part of the Railway Company?

But, on examination of the testimony of Murray and Piper, the conclusion is irresistible, that the cattle were un-

loaded and delayed over night at Louisiana, simply because Piper would not go on until the cattle should have been fed and watered. To do this necessitated their being taken to the stock-yards and unloaded, and consequently detained, till the train should leave for Chicago on the following day. The ferry boat made but one trip after that. The fact that a delay occurred, and that the cattle in consequence lessened in weight or value, or that the price in market declined in the meantime, raised no presumption of negligence. 34 Md., 197; 6 Am. Rep., 321.

3. If this contract had imposed all of the duties and liabilities of a common carrier upon plaintiff in error, both upon and beyond its own line, and contained no stipulations of exeption from liability, defendant in error would not be entitled to recover under the evidence. A common carrier is not an insurer as to time of delivery. His duty is to deliver in a reasonable time; and what is a reasonable time is to be determined from all the circumstances attending the carriage. If the carrier has used reasonable diligence, and there is a delay, he is excused, even if the delay is not caused by act of God. Angell on Carriers, §§ 283–289; Story on Bailments, § 545a; 14 Wend., 215; 2 Kernan, 245; 6 Duer, 376.

4. After the obstruction in the river at Louisiana the carrier was not bound to send the cattle to Chicago by another route. 68 Penn. St., 302.

*Thacher & Stephens,* for defendant in error:

It is claimed by the motion for a new trial that the judgment is not sustained by sufficient evidence. The evidence and the written contract show that plaintiff in error, though employing a connecting line, was nevertheless a common carrier from the point of shipment to the terminal point. (104 Mass., 122.) The contract was one to "forward" the cattle, which means the same as "transport" or "carry." (1 E. D. Smith, 121.) The clauses of the contract which plaintiff in error relies on to shield itself from liability are as follows: "And that the party of the first part and connecting lines

over which such freight may pass shall not be responsible for any loss, damages, or injury which may happen to said freight in loading, forwarding or unloading; * * * by any accident in operating the road, or delay caused by storm, fire, failure of machinery, or cars, or obstruction of track from any cause, or by fire from any cause whatever; or by any other cause except gross negligence; and that said party of the first part and such connecting lines shall be deemed merely forwarders and not common carriers, and only liable for such loss, damage, injury or destruction of such freight as may be caused by gross negligence only, and not otherwise." While it may be an open question in this state whether common carriers will be permitted to limit their common-law liability, yet it cannot be doubted that courts more and more look with aversion on such contracts, and are disposed to construe such exemptions strictly. (8 Kas., 244; Albany Law Journal, April 26, 1873, p. 265.) But the damage in the case at bar resulted from the grossest negligence, if not fraud, of plaintiff in error. It undertook to transport these cattle to Chicago by railroad, when it knew there was great danger of its being unable to do so, and yet concealed this fact from the shipper. The loss happened on account of this existing difficulty in crossing the river. Moreover, when the peril was first made known to Piper at Mexico, he urged the agent of the plaintiff in error to send him to Chicago by one of two routes, on which there was no obstruction, and so fulfill its contract. This the agent declined to do, but forwarded the stock to a point where he had good reason to believe there would be great difficulty in carrying out the contract. Moreover, the record shows inexcusable delay and negligence in not seizing the first opportunity after the cattle had been rested to send them on to their destination. No reason whatever is given why the cattle were not taken over the river the next morning when the ferry boat passed over. The company knew of the increasing hazard and danger from delay, and yet took no measures to expedite the cattle forward. Then, too, it delayed several days in sending them over on the private ferry. It could have done

so several days sooner than it did. Besides, it is disclosed that the carrier was urged to send the cattle by some other route after they reached Louisiana, as it could have done by sending them a three-hours' ride back to Mexico. Now the court sitting as a jury found that these acts, or failures to act, on the part of plaintiff in error amounted to a clear violation of its contract. This being the decision of the court on evidence clearly competent, and fully tending to establish the facts necessary to such a determination, it is difficult to see how any wrong has been done plaintiff in error.

The opinion of the court was delivered by

BREWER, J.: On the 27th of November, 1872, Piper shipped from the stock yards at Kansas City, by the railway of plaintiff in error, a lot of cattle to Chicago. The shipment was under a written contract, of which the following is a copy:

"THIS AGREEMENT, made this 27th of November, 1872, between the *St. Louis, Kansas City & Northern Railway Company,* party of the first part, and *G. W. Piper,* care Hugh, Reeves & Sturgis, party of the second part, witnesseth: That the party of the first part will forward for the party of the second part the following freight, to-wit, two cars of cattle, 35 head, M. or L., from Kansas City to Chicago, at the rate of $70 per car, which is a reduced rate made expressly in consideration of this agreement, in consideration of which the party of the second part agrees to take care of said freight while on the trip, and load and unload the same at his or their own risk and expense, and that the party of the first part and connecting lines over which such freight may pass shall not be responsible for any loss, damage, or injury which may happen to said freight in loading, forwarding, or unloading; by suffocation, or other injury caused by overloading cars; by escapes from any cause whatever; or by any accident in operating the road, or delay caused by storm, fire, failure of machinery or cars, or obstruction of track from any cause, or by fire from any cause whatever, or by any other cause except gross negligence; and that said party of the first part and such connecting lines shall be deemed merely forwarders, and not common-carriers, and only liable for such loss, damage, in-

jury, or destruction of such freight as may be caused by gross negligence only, and not otherwise; and the said party of the second part agrees to assume all risk of damage or injury to, or escape of, the live stock which may happen to them while in the stock yards awaiting shipment. It is also further agreed between the parties hereto, that the person or persons riding free under this contract in charge of the stock do so at their own risk of personal injury from whatever cause. Charges $28.50."

The transportation was delayed. The cattle were injured. Their value in the Chicago market was depreciated, and the shipper was put to extra expense for feed, etc., for all of which he brought his action before a justice of the peace of Douglas county. He recovered a judgment of $300 before the justice, from which the company appealed. In the district court he recovered a judgment of $280.15, and of this the plaintiff in error now complains.

Upon the record two principal questions arise, and the first is, what liabilities were assumed by the plaintiff in error by 1. Liability of this contract? It is insisted by counsel that the railroad company; contract; company, except as to its own line, was simply negligence. a *forwarder*, and that its responsibility ceased when it delivered the cattle in good condition to the connecting line. We think this is a mistake. The company contracted "to forward the cattle from Kansas City to Chicago;" and the word *forward*, as here used, seems to us to mean the same as "transport," or "carry." (*Mer. Mu. Ins. Co. v. Chase*, 1 E. D. Smith, 121.) Having contracted to carry the cattle to Chicago, a contract it was competent to make even though the carriage involved transportation beyond its own line, it became responsible as a common-carrier, except so far as it limited that responsibility by special contract. A common-carrier may by contract limit its common-law liability, but not so far as to discharge itself from loss occasioned by its own negligence, and this means ordinary negligence. By this contract therefore the plaintiff in error was only responsible for such injuries as resulted from its own negligence; but in this respect negligence on the part of any of the par-

St. L., K. C. & N. Rly. Co. v. Piper.

ties employed in the transportation was imputable to it. In this case the burden of proving negligence is on the part of the shipper. (*K. P. Rly. v. Reynolds,* 8 Kas., 624; *Kallman v. U. S. Ex. Co.,* 3 Kas., 205.) And this brings us to what in our judgment is by far the most serious question in the case: Does the testimony show negligence on the part of the

2. Trial by court; general finding; contradictory testimony.

carriers? The case was tried before the district judge without a jury. There were no special findings of fact, but only a general finding for plaintiff. That finding finds all the facts necessary to sustain the judgment—finds, therefore, negligence on the part of the carrier. There is a direct and serious conflict in the evidence, and if the testimony of the company's witnesses was accepted as true, the company was not responsible; and even the plaintiff's evidence makes but a scanty showing of negligence. Still, the rule is well settled that limits the inquiry in this court to questions of law, and leaves questions of fact to be settled by the trial tribunals, to be disturbed only in cases of manifest error. The reasons of this rule have been often given, and its application enforced in very doubtful cases. See among others, *School District v. Griner,* 8 Kas., 224; *Ulrich v. Ulrich,* 8 Kas., 402; *A. T. & S. F. Rld. Co. v. Stamford,* 12 Kas., 354. And in this case there was some evidence pointing to negligence. The cattle were shipped *via* Mexico and Louisiana, to cross the river at the latter place. The transportation across the river at that point was by ferry. The road of plaintiff in error stopped at Mexico, and it could thence either ship by Louisiana, to cross on a ferry, or by Quincy to cross on a bridge. When the cattle reached Mexico, the agent there was aware of trouble in crossing at Louisiana, on account of ice, and was requested by Piper if there was any doubt about the crossing to send the cattle by Quincy. The agent however forwarded them to Louisiana. When the cattle reached the latter place they were unloaded, put into the stock-yards, and kept all night. The next morning the ferry boat ran on a bar, and was fast for several days. About eight days thereafter the cattle were taken out

of the yards, crossed on a private ferry, driven fourteen miles, and then loaded on the cars and forwarded to Chicago. The cattle were some twenty-six hours in transportation from Kansas City to Louisiana, while the ordinary running time between the two places was sixteen to eighteen hours. Eight or nine hours were consumed in stoppages between Kansas City and Mexico, and the regular stock train had already left the latter place when these cattle reached there. After a delay of some three hours, the cars were sent forward by a passenger train. Both the stock and the passenger train crossed that night at Louisiana. The agent there knew of the ice gorge in the river, and the uncertainty of crossing, and the probability of the ferry being stopped, and still caused the cattle to be unloaded and kept on the west side of the river, instead of crossing them as he could have done that night. The private ferry was running some three or four days before the cattle were crossed. It seems then, that but for the delay in the running of the train from Kansas City to Louisiana, and no explanation is given of this delay, the cattle would have crossed the river and been forwarded without loss or trouble to Chicago; that at Mexico, where the line of the plaintiff in error stopped, the agent knew of the doubt as to crossing at Louisiana, and still chose to forward the cattle by that route instead of by one which avoided all danger; and that at Louisiana, the agent, fully aware of the condition of the river, caused the cattle to be unloaded and kept on the west side, instead of crossing them, thereby assuming the risks of the interruption of the ferry. We are not prepared to say that there was manifest error in finding from the facts, of which the foregoing is a general statement, that the company was guilty of negligence, and therefore the judgment must be affirmed.

All the Justices concurring.