83   343
96   491

# Ala. Great Southern Railroad Co. *v.* Thomas & Sons.

*Action against Railroad Company, as Common Carrier, for Injuries to Cattle Transported.*

1. *Liability of carrier for goods consigned to point beyond terminus of his road.*—A railroad company, receiving cattle as a common carrier, for transportation over its own road, to be delivered at its terminus to the next connecting road, and thence by other connecting roads to the place of destination in another State, is liable only for the safe transportation of the cattle over its own road, and their proper delivery at its terminus to the next connecting road.

2. *Variance.*—Where the complaint claims damages of the defendant railroad company, as a common carrier, for injuries to cattle transported over its road under a written contract, which bound the defendant to deliver safely, at the terminus of its own road, to the next connecting railroad company; while the proof shows that the cattle, having been safely carried to the terminus of the defendant's road, and there delivered to the next connecting road, were then put into unfit cars, in violation of the promise of defendant's depot-agent that the cars should not be changed, and were afterwards injured by reason of the defective accommodation of the cars; if the defendant is liable for the conduct of

its depot-agent in this particular, which is not decided, there is a fatal variance between the allegations and the proof.

3. *Special contract limiting liability of common carrier.*—A railroad company, receiving cattle for transportation as a common carrier, can not by special stipulation limit its liability to injuries caused by "gross or wanton negligence," nor to that of a mere agent of the consignor, in the matter of delivering the cattle to the next connecting road, such stipulations being contrary to public policy.

APPEAL from the Circuit Court of Sumter.

Tried before the Hon. S. H. SPROTT.

This action was brought by E. R. B. Thomas & Sons, suing as partners, to recover damages for injuries to cattle received by the defendant, as a common carrier, at Epes' Station on its road, on the 29th April, 1886, to be delivered to O. C. Thomas, at New Orleans; the complaint alleging that "the cattle were bruised and injured while in charge of said defendant, and in route to their destination, and that said defendant was guilty of negligence in reference to said cattle, in this, that it failed to provide bedding and partitions in the car containing said cattle, and crowded too many into one car." An amendment of the complaint is copied into the transcript, which alleged "that the defendant took the cattle from the cars in which they were loaded at Epes' Station, and, while they were in route to their destination, put them in other cars, without the knowledge or consent of plaintiffs; which said cars were without bedding or partitions, and therefore in an unfit condition for shipping cattle; and in making said change, crowded too many cattle in one car." But this amendment is nowhere mentioned, either in the judgment-entry, or in the bill of exceptions; nor does the record show what pleas were filed.

On the trial, the plaintiffs read in evidence the contract between the parties, under which the cattle were received for transportation by the defendant, and which was signed by plaintiffs and by an agent for defendant, the following being its material stipulations: "This memorandum of a special contract of carriage, between the Alabama Great Southern Railroad Company · and E. R. B. Thomas & Sons, witnesseth: Whereas the said E. R. B. Thomas & Sons have this day shipped 37 head of cattle, shippers' count, to be carried by the Alabama Great Southern Railroad Company, from Epes to Meridian, both points on the line of its own road, and by it, as agent of shippers, to be forwarded to O. C. Thomas at New Orleans, on the same terms as this contract. In consideration of the special rate of $54 per car,

guaranteed by said railroad company between said point of shipment and New Orleans, the shipper hereby agrees to load, unload, feed, water, and take all proper care of said stock, and insure the said railroad company, and all connecting lines over which said stock may pass between points of shipment and destination, from all loss or damage which may be incurred by delays in transportation or delivery, or arising out of its responsibility as master over its agents or servants (gross or wanton negligence excepted), growing out of this shipment; and the shipper hereby further agrees that the actual value of said stock at time and place of shipment shall govern the settlement of any damages for which the carriers may be liable, and declares that the value of said stock does not exceed $25 per head."

O. C. Thomas, one of the plaintiffs, was examined as a witness for them, whose testimony is copied in the opinion of the court; and this being all the evidence, the defendant requested the following (with other) charges: (1.) "If the jury believe the evidence, they must find for the defendant." (3.) "Under the contract in this case, the defendant is not liable for the manner in which the cattle were loaded in the cars for shipment from Meridian on the Mobile & Ohio road, nor for the character of the cars furnished by said M. & O. road for their shipment." The court refused these charges, and the defendant duly excepted. The refusal of each of the charges asked is now assigned as error.

J. B. HEAD, for the appellant, contended that there was a fatal variance between the allegations and the proof, and cited Hutchinson on Carriers, §§ 155–57.

J. J. ALTMAN, contra.

STONE, C. J.—The contract of the appellees with the appellant railroad company did not require the latter to deliver the cattle at New Orleans, Louisiana. It did, however, require of it that it should safely transport to Meridian, and there deliver them to the connecting road, to be by the latter forwarded to its terminus, and thence again delivered to its connecting road, and so on to the consignee at New Orleans. The entire duty of the transportation did not rest on the receiving road, nor on any one of the connecting roads. Each road was severally accountable for its own separate conduct, in transporting and delivering to the next; the last one being

required to deliver to the consignee. This case, then, does not fall within the rule declared in *Mobile & Girard Railroad Co. v. Copeland*, 63 Ala. 219, which rule is well sustained by authority.—*Buckland v. Adams Express Co.*, 97 Mass. 124; *Lock Co. v. Railroad*, 48 N. H. 339; *Cutts v. Brainard*, 42 Ver. 566; *Wilcox v. Parmelee*, 3 Sandf. 610; *Mer. Mut. Ins. Co. v. Chase*, 1 E. D. Smith, 115; *E. T., Va. & Ga. R. R. Co. v. Rogers*, 6 Heisk. 143; *St. Louis, Kansas City & N. W. Railway Co. v. Piper*, 13 Kans. 505. It falls within another class; and being the receiving road, its contract and duty required of it only to transport the cattle safely over its own line, and deliver properly to the next connecting line.—Hutchinson on Carriers, § 154.

The cattle were shipped at Epes' Station on appellant's road, in cars bedded and partitioned; and there is no complaint that they did not reach Meridian uninjured. Meridian was the terminus of the receiving road, and its contract bound it to carry the cattle no farther. Its only remaining duty, under its contract, was to safely and properly deliver the cattle to the connecting road. If it did, it performed all the duties required of it by its contract, and the present suit is without merit.

There was but a single witness examined on the trial, and his testimony, together with the shipping contract, was the entire evidence before the jury. He was, we infer, one of the firm of E. R. B. Thomas & Sons, the shippers, and was named as consignee of the cattle at New Orleans. He testified, that he himself had prepared the cars with beds and partitions, and loaded the cattle upon them; that he accompanied them on the same train, from Epes' Station to Meridian, and that they arrived there safely. His further testimony is as follows: "When they reached Meridian, witness saw Reeder, who was defendant's depot-agent at Meridian, and asked him if he was going to unload his cattle, and put them into other cars, for shipment over the Mobile and Ohio road—a line connecting with defendant's line on the way to New Orleans. Reeder replied, that he would not, but that he would have the wheels or trucks of the cars containing the cattle changed, so as to fit the gauge of the Mobile and Ohio track. Witness told Reeder, that he did not want him to have his cattle taken out of the cars they were in, and put in other cars; and if there was any unloading and reloading to do, he wanted to attend to it himself. Upon Reeder's saying and promising

that the cattle would not be changed and put into other cars, witness went to his supper, leaving the two cars of cattle standing at defendant's station. When witness returned from supper, he saw that his cattle had been put in other cars in his absence, and the cars containing them were then being switched from defendant's station to the station of the Mobile and Ohio railroad; and those cars, with the cattle in them, were carried on that night by the Mobile and Ohio train, witness himself going with the train, and riding about ninety-six miles of the way in one of the cars with the cattle, to take care of them. He testified, that said cars were very unfit for the shipment of cattle; that they had no partitions or bedding, both of which were necessary for the safe carriage of cattle, and far too many were crowded in one car, and too few in the other car; and that ten or fifteen head of cattle were badly damaged on account of the condition of said cars, and the improper manner in which they were loaded." He then gave his estimate of the damage; and this was all the testimony.

It is manifest that no duty rested on the defendant's depot-agent, Reeder, nor on the defendant railroad company, by the mere force of its written contract, to do more than deliver the cattle safely to the connecting railroad. This the testimony admits he did.

The complaint, as amended, counts on an entire contract to deliver at New Orleans, and assigns, as a special breach, "that defendant took the cattle from the cars in which they had been loaded at Epes' Station, and while they were in route to their destination, and put them in other cars, without the knowledge or consent of plaintiffs; and that such other cars were without bedding or partitions, and therefore in an unfit condition in which to ship cattle; and further, the defendant, in making the changes in cars aforesaid, crowded too many cattle in one car."

Comparing the proof with the contract of affreightment, as interpreted above, it is clear that there was a fatal variance between the averments and the proof. As we have shown, if the receiving road transported the cattle safely to its terminus, and properly delivered them to the connecting road, it is not liable for injury afterwards suffered. There is no complaint of its conduct in the transportation to Meridian, its terminus. If there was any wrong or negligence on its part, it was in the delivery by Reeder, its depot-agent, after what is alleged to have taken place with Thomas, on

the arrival of the cars at Meridian.    Oscar C. Thomas, the witness, as we suppose, was both one of the consignors and the consignee, which would, if true, exert some influence in determining the extent of his authority to control the transportation.    We propose not to decide, at this time, whether Reeder's alleged conduct, if true, fastened a liability on the defendant railroad company.  If the pleadings are so amended as to raise the question, the testimony may be very different on another trial, and other questions of law and fact may arise.—See *S. & N. Railroad Co. v. Huffman*, 76 Ala. 492; *L. & N. Railroad Co. v. Whitman*, 79 Ala. 328; *Ala. Gr. So. Railroad Co. v. Heddleston*, 82 Ala. 218; *M. & E. Railway Co. v. Culver*, 75 Ala. 587; *E. T., Va. & Ga. Railroad Co. v. Johnston*, Ib. 596; *Ala. Gr. So. Railroad Co. v. Smith*, 81 Ala. 221.

The attempt of the defendant railroad company, shown in the contract of affreightment, to relieve itself of liability, "except for gross or wanton negligence," and also its attempt to reduce its responsibility in the matter of delivering to the connecting road to that of mere agent of the consignor, are opposed to public policy, and can not be allowed.—*Steele v. Townsend*, 37 Ala. 247; *Piedmont & Ar. Life Ins. Co. v. Young*, 59 Ala. 476; *Com. Fire Ins. Co. v. Allen*, 80 Ala. 571.

Under the rules we have declared, the Circuit Court erred in refusing to give the charge numbered 1, asked by defendant.    Charge No. 3 is technically correct.    For reasons stated above, and because other issues of law and fact may arise, we decline to pass on charges 5, 6, and 7.

Reversed and remanded.