# Ala. Great Southern Railroad Co. *v.* Thomas & Sons.

*Action by Consignor of Cattle, against Railroad Company as Common Carrier.*

1. *Liability of railroad company as common carrier; delivery to connecting road.*—When a railroad company, or other common carrier, receives goods consigned beyond the terminus of its own road, under an agreement to deliver them to a connecting line, the contract imposes, not only the duty to carry safely over its own road, but also to safely deliver to the next connecting carrier.

2. *Same.*—The liability of the first carrier, in such case, does not necessarily terminate with the arrival of the goods at its own terminal depot, when there is a further duty to carry the goods over an intermediate short line between its own terminal depot and the other connecting road, especially when the intermediate short line is a part of its own road.

3. *Same; instructions of shipper.*—In undertaking to forward goods beyond the terminus of his own route, the carrier is bound to obey all reasonable instructions of the shipper, or consignor, not in conflict with the terms of the contract between them; and if the goods are lost in consequence of his disregard of such instructions, he is liable for their value, although the loss occurred in the possession of another carrier, or another person.

4. *Same; special stipulations limiting liability.*—A common carrier

[Ala. Great Southern R. R. Co. v. Thomas & Sons.]

can not, by special contract, so limit his liability as to evade responsibility for injuries caused by the negligence of his own servants, such contract being contrary to public policy.

5. *Same; extent of liability*—Except so far as limited by valid special contract, a common carrier is an insurer against all losses, except those caused by the act of God, the public enemy, or contributory negligence on the part of the consignor. -

6. *Same; as forwarding agent of consignor.*—So far as the carrier acts as the forwarding agent of the consignor, undertaking to have the goods forwarded by a connecting line, he is liable only as bailee for the exercise of ordinary care—that is, such care as persons of ordinary prudence exercise in reference to their own property.

7. *Bill of lading; construed against carrier.*—A bill of lading, given by a carrier for the safe transportation and delivery of goods, will be construed most strongly against him, and in favor of the shipper, in every case of doubt.

8. *Changing cattle to other cars.*—The defendant railroad company having received cattle for transportation over its own road, and safe delivery at its terminus to a connecting road, and having transferred them, at its terminus, to cars furnished by the connecting road, was bound to permit the consignor (plaintiff) to put the cars in proper condition for the safe transportation of the cattle, as he had agreed to do, or to have that duty performed by its own servants with reasonable care and diligence, providing suitable bedding, necessary partitions, &c., and avoiding undue crowding of the animals in the cars; and the injury to the cattle resulting from the negligent performance of this duty by defendant's servants, after plaintiff had offered to discharge it himself, the defendant is liable.

9. *Same; conversation between plaintiff and depot-agent; authority of agent.*—In such case, it is competent for the plaintiff to prove that, on the arrival of the cars at the defendant's terminus, he asked the depot-agent if the cattle were to be transferred to other cars, as he desired to superintend the transfer and preparation of the cars, and was told by the agent that no transfer would be made; that the cattle were afterwards transferred during his temporary absence, and that he then notified the agent, if any injury resulted from the improper transfer or preparations, he would hold the defendant liable for it. As to these matters, the agent was acting within the scope of his authority and duties, and the evidence tends to show an offer by plaintiff to perform the duties imposed on him by the contract.

10. *Action against corporation, foreign or domestic.*—The Alabama Great Southern Railroad Company being a domestic corporation, an action may be maintained against it here, to recover damages for injuries to cattle transported over its road under a contract made in Alabama, although the injury occurred at Meridian, Mississippi, the terminus of its road.

11. *Amendment of complaint; statute of limitations.*—The *gravamen* of the original complaint, in an action against a railroad company as a common carrier, being the injury to plaintiff's cattle by the alleged negligence of the defendant's servants in their transportation over its road, or in the failure to deliver them safely to the connecting road, as stipulated in the bill of lading; amendments may be allowed, correcting a misdescription of the contract, as to agreed point of destination of the cattle, or otherwise curing an imperfect statement of the same subject-matter, or stating facts which more clearly show the negligence complained of, or otherwise altering the grounds of recovery, or varying the allegations as to the mode in which the defendant has violated its duties growing out of the contract; and the statute of limitations can not be pleaded to such amendments.

APPEAL from the Circuit Court of Sumter.

Tried before the Hon. SAM. H. SPROTT.

This action was brought by E. R. B. Thomas & Sons, suing as partners, against the appellant railroad company, as a common carrier, to recover damages for injuries to a lot of cattle which were received for transportation over the defendant's road, at Epes' Station, and injured before they reached their destination by the alleged negligence of the defendant's servants; and was commenced on the 27th April, 1887. The bill of lading, or contract. for the transportation of the cattle, was dated April 29th, 1886, and stated that the plaintiff had shipped the cattle, "to be carried by the Ala. Great Southern Railroad Company, from Epes' to Meridian, both points on the line of its own road, and by. it, as agents of shippers, to be forwarded to O. C. Thomas at New Orleans, on the same terms as this contract;" and it contained a further stipulation, that "the shipper hereby agrees to load, unload, feed, water, and take all proper care of said stock."—See the former report of the case (83 Ala. 343–48), where the contract is set out in full. The original complaint alleged that the cattle were received by the defendant as a common carrier, at Epes' Station, to be delivered to Oscar C. Thomas at New Orleans, for a reward; that they were bruised and injured while in charge of the defendant, and en route to their destination; and that the defendant "was guilty of negligence in reference to said cattle in this: that it failed to provide bedding, and partitions in the cars, and crowded too many cattle into one car," by reason whereof said cattle were greatly injured. An amendment of the complaint was filed October 27th, 1887, and allowed without objection, as the judgment-entry now recites, which alleged that the defendant "took the cattle from the cars in which they were loaded at Epes' Station, and, while they were en route to their destination, put them in other cars, without the knowledge or consent of plaintiffs, which said cars were without bedding or partitions, and therefore in an unfit condition for shipping cattle; and in making said change, crowded too many cattle into one car," &c.

On the former appeal, as the report shows, the judgment was reversed, and the cause remanded, on the ground that there was a fatal variance between the averments of the complaint and the proof. After the remandment of the cause, an amendment of the complaint was allowed by the

court, without objection, by striking out the words, "to be delivered to Oscar C. Thomas at New Orleans, Louisiana," and inserting the words, "to be carried by the defendant to Meridian, Mississippi, and by defendant delivered to a connecting line of road, for transportation to Oscar C. Thomas, at New Orleans, Louisiana." Another amendment was allowed by the court, against the objection of the defendant, which is in the form of an additional count, and is called indifferently "the 5th count" and "the 5th amendment." This count claimed $150 as "damages done by defendant to certain cattle of plaintiffs', to-wit, twelve head of cattle, received under a contract of shipment by defendant as a common carrier, from plaintiffs, at Epes' Station, Alabama, on the 29th April, 1886, to be carried by defendant as a common carrier, for a reward, to Meridian, Mississippi, and by said defendant delivered to a connecting line of road, to be forwarded to O. C. Thomas, at New Orleans." The count alleged that, "under said contract, it was defendant's duty, as a common carrier, to transport said cattle safely over its own line of road, and to deliver the same safely and properly to said connecting line;" that defendant "did not transport said cattle safely over its own line, and did not deliver them safely and properly to said connecting line, but failed to do so in this: that while said cattle were in defendant's charge, and on defendant's road, at Meridian, Mississippi, the defendant transferred said cattle to other cars than those in which they had been originally placed at Epes' Station, and in transferring them put too many cattle into one car, and failed to partition and bed said cars, so that said cattle were not in a safe and proper condition for delivery under said contract of shipment to said connecting line, and delivered said cattle to said connecting line, to-wit, the Mobile and Ohio Railroad line, in said cars while in said unsafe and improper condition as to the bedding and partitions, to be forwarded as aforesaid;" "that the transferring of said cattle to other cars, in the manner aforesaid, and with said cars in said condition as to bedding and partitions, was a breach of said contract of shipment, and was an act of neglect of duty on the part of said defendant," and that the cattle were greatly injured "by reason of said unsafe and improper delivery."

The defendant objected to the allowance of this amendment, specifying ten separate grounds of objection; and his objections being overruled, he demurred to the amended count

on the same grounds, which were in substance, (1) that it was a departure from the original complaint; (2) that it showed no cause of action against the defendant, but showed, on the contrary, that defendant had performed its full duty when the cattle were safely delivered to the connecting road at Meridian; (3) that the negligence complained of occurred in Mississippi, and beyond the limits of Alabama; (4) that it showed no authority on the part of defendant's agents or servants to transfer and reload the cattle as alleged; (5) that the damage was too remote, and was not the natural and proximate result of the negligence complained of. The court overruled the objections and the demurrer, and the defendant then pleaded the statute of limitations of one year to the amended (or 5th) count; to which plea the court sustained a demurrer, and the cause was tried on issue joined on the plea of "the general issue."

On the trial, the plaintiffs proved and offered in evidence the bill of lading, or written contract for the transportation of the cattle, and introduced O. C. Thomas as a witness, who was one of the plaintiffs. Said Thomas testified, "that he prepared the cars at Epes' Station to receive the cattle, by properly bedding them, and putting in necessary partitions, and himself loaded the cattle in them; that they were properly loaded, and went through to Meridian with dispatch and safety, witness going with them on the same train"; also, "that when he reached Meridian, he saw Reeder, who was defendant's depot-agent there, and asked him if he was going to have the cattle unloaded and put into other cars, for shipment over the Mobile & Ohio road, which connected with defendant's line on the way to New Orleans; that Reeder replied that he would not, but would have the trucks of the cars changed, so as to fit the guage of the Mobile & Ohio track; that he told Reeder he did not want the cattle taken out and put into other cars, and, if there was unloading and reloading to do, he wanted to attend to it himself; that he went off to get his supper, on Reeder's saying that the cattle would not be changed to other cars, leaving the two cars of cattle standing at defendant's station; that on his return, between nine and ten o'clock that night, he saw that his cattle had been put into other cars in his absence, and the cars containing them were then being switched from defendant's station to the Mobile & Ohio road"; that he asked Reeder why this was done, who replied that he could not get trucks from the M. & O. road, and therefore transferred the cattle

to cars furnished by that road; and that he then told Reeder, "if any damage happened to the cattle, he would hold the A. G. S. R. R. Company responsible." To each part of the testimony of this witness, as to his conversation with Reeder, and to the entire conversation, the defendant objected, and duly excepted to its admission. The witness further testified, that he went down to the cars in which the cattle were, "in company with some gentlemen sent with him by Reeder, and found that the cars were not properly loaded"; that he then attempted to remedy the defects, but could not do so for want of necessary materials; that the cars were unfit for the shipment of cattle, for want of proper bedding and partitions, and too many cattle were crowded into one car; that the cattle were uninjured when they left Meridian, but were badly damaged before they reached Mobile, to the amount of $150; and that this damage resulted from the improper crowding of the animals, and from the want of necessary bedding and partitions. The defendant introduced evidence tending to impeach the testimony of Thomas as to the condition of the cars into which the cattle were transferred, and his dissatisfaction with what had been done; but no question is raised on this evidence.

The above being "all the evidence in the case," the defendant requested ten charges in writing, duly excepting to their refusal. The first five charges were general charges on the evidence, denying the plaintiff's right to recover under the original complaint, under any one of the amendments, or under the entire complaint as amended; and the others were as follows: (6.) "If the cattle were properly carried from Epes' Station to Meridian, then, though there may have been negligence on the part of the defendant's servants in forwarding them from Meridian by the connecting carrier, such negligence would not entitle plaintiffs to recover in this action." (7.) "Under the contract in this case, the defendant is not liable for the manner in which the cattle were loaded in the cars, for shipment from Meridian on the Mobile & Ohio railroad, nor for the character of the cars furnished by said M. & O. road for their shipment." (8.) "The liability of the defendant as common carrier ceased when it safely carried the cattle to Meridian, and for its acts in forwarding them from Meridian it is liable only as agent of the shipper, which liability can not be enforced in this action." (9.) "Plaintiffs' counsel insists that, under the contract, it was the duty of Thomas to unload and load at Meridian, and

[Ala. Great Southern R. R. Co. v. Thomas & Sons.]

that Reeder, as defendant's agent, had it done against the protest of Thomas, and upon his own promise not to have it done, and in the absence of Thomas, and without his knowledge. The court charges you that, if such were the duties of Thomas, and he was prevented from discharging them by Reeder as such agent, then defendant is not responsible, in this action, for the acts of Reeder in that regard." (10.) "The evidence in this case shows that the negligence complained of was done in forwarding the cattle from Meridian, and not as a carrier under the contract."

The assignments of error, 18 in number, embrace all the rulings of the court on the pleadings and evidence, and the refusal of the several charges asked.

JUDGE & DEGRAFFENREID, for appellant.

ALTMAN & PATTON, *contra.*

·SOMERVILLE, J.—The suit is for damages claimed by the owner and shipper of certain cattle, for injury to the animals, which is alleged to have been the result of the defendant's negligence, growing out of a violation of duty.imposed by the contract of shipment. The agreement of the railroad was to receive the cattle at Epes' Station, in this State, and to transport them to Meridian, each of these points being on its own line, and, as agent of the shipper, to forward the animals from the latter place to New Orleans. The shipper agreed to load, unload, and take proper care of the cattle, while *in transitu.* · The contract, also, attempts to limit the defendant's liability to injuries caused by "gross or wanton negligence," and to that of a mere forwarding agent of the shipper in the matter of delivering the cattle to the next connecting line.

The complaint was amended several times, and some questions are raised, both by demurrer and plea, as to the legality of these amendments as properly coming within the *lis pendens,* and the effect of the statute of limitations which was interposed as a defense to them. Before considering these points, we formulate the following principles, as governing some of the most important issues involved in the case:

1. Where a railroad, or other common carrier, receives goods consigned beyond the terminus of its own road, with the agreement to deliver to a connecting line, the contract of

[Ala. Great Southern R. R. Co. v. Thomas & Sons.]

shipment imposes not only the duty to transport safely over its own road, but to safely deliver to the next connecting carrier. The duty assumed, in other words, is both to safely carry, and to safely deliver.— *Wells v. Thomas*, 72 Amer. Dec. 228, note pp. 236-237; *Ala. Gr. So. R. R. Co. v. Thomas*, 83 Ala. 343.

2. In such case, the liability of the first road, or carrier, does not necessarily terminate with the arrival of the goods at its own terminal depot, although its responsibility as carrier may terminate there, if there is no further duty of carriage in order to make the connection with the other road over which the goods are to be transported. If there be any duty to carry the goods over an intermediate short line, connecting its own terminal depot with the other connecting road, in order to complete the act of delivery, its liability on the intermediate line obviously is that of a carrier, and not of a forwarder, especially if this line be a part of its own road.—*Goold v. Chapin*, 20 N. Y. 259; 75 Amer. Dec. 398.

3. The carrier, in undertaking to forward goods beyond the terminus of its own route, is bound to obey all reasonable instructions of the shipper, or consignor, not in conflict with the terms of the contract of shipment; and if he disregard such instructions, and the goods be lost by reason of this act of negligence, he will be liable for their value, although the loss may occur in the possession of another carrier, or person.—*Johnson v. N. Y. Central Trans. Co.*, 88 Amer. Dec. 416. "If, in forwarding, shipments are made in a manner prohibited by the sender, the carrier so forwarding is liable as an insurer for the safe delivery of the articles so sent."—*Ib.* 418, and cases cited in note; *McGhee v. Camden R. R. Co.*, 45 N. Y. 514.

4. The carrier can not limit his liability, so as to evade responsibility for injuries which may occur through the negligence of his own servants—such contract being deemed contrary to public policy.—*Ala. Gr. So. R. R. Co. v. Thomas*, 83 Ala. 343; 3 Brick. Dig. 119, § 39, and cases cited.

5. The liability of a common carrier, except so far as lawfully limited by special contract, is that of an insurer against all losses, except those occasioned by the act of God, the public enemy, or the contributory negligence of the consignor.—*L. & N. R. R. Co. v. McGuire*, 79 Ala. 395; *Ala. Gr. So. R. R. Co. v. Little*, 71 Ala. 611; *L. & N. R. R. Co. v. Sherwood*, 84 Ala. 178.

6.  In so far as the·carrier acts as a mere forwarder, assuming as agent of the consignor to have the goods forwarded by a connecting line, he is liable only as bailee for the exercise of ordinary care, or such care as persons of ordinary prudence exercise in reference to their own property under like circumstances.—*Baltimore R. R. Co. v. Schumacker*, 96 Amer. Dec. 510; *Hooper v. Wells*, 85 *Ib.* 211; Story on Bailments, sec. 444.

7.  In construing a bill of lading given by the carrier for the safe transportation and delivery of goods shipped by a consignor, the contract will be construed most strongly against the carrier, and favorably to the consignor, in case of doubt in any matter of construction.

8.  In the present case, the duty imposed upon the defendant railroad was not only to carry the cattle safely from Epes' Station to its depot at Meridian, but to deliver them safely for transportation to the agents of the connecting road. It is immaterial whether the cattle were delivered in the original cars in which they were stored, belonging to defendant's road, or in cars furnished by the connecting road. If the defendant accepted such cars, and had the cattle transferred to them for shipment, preparatory to delivery to the connecting road, the duty devolved on its agents to do one of two things: (1) to permit the consignor, Thomas, to put the cars in proper condition to safely transport the cattle, as he had agreed to do; or (2) to itself perform this duty with reasonable care and diligence. This duty included, as the evidence tends to show, the act of providing suitable bedding for the cars, partitions to keep the cattle apart, and the exercise of proper care in not unduly crowding the animals together in too great numbers in any one car.

The defendant's depot agent at Meridian, Reeder, attended to the matter of transferring the cattle. The Alabama Great Southern Railroad, and the Mobile & Ohio Railroad to which the cattle were delivered, connected with each other at a union depot, in the town of Meridian, where the roads intersected or crossed. The freight depots of the two connecting roads were each about a quarter of a mile from the Union depot, or crossing. The intermediate line of delivery was, therefore, a half mile in length—connecting the two freight depots.

9.  The conversation between the plaintiff and Reeder, to which objection was taken by the appellant, was perfectly competent, to prove that the plaintiff had used all proper

diligence in seeking to perform his part of the shipping contract, as to taking due care of the stock, and that the defendant's agent had relieved him of the duty of bedding cars, and otherwise preparing them for shipping the cattle. That this was within the scope of the agent's authority there can be no doubt. The authority to keep the cattle in the original cars, or transfer them to others furnished by the Mobile & Ohio road, involved by implication the duty to put the cars in suitable condition for this transfer, or else to allow the plaintiff to do so under his contract.—*East Tenn., Va. & Ga. R. R. Co. v. Johnston*, 75 Ala. 596.

The evidence scarcely admits of more than one reasonable inference as to the cause of the injury to the cattle. This injury was obviously the result of the negligent manner in which the cattle were placed in the cars—the failure to furnish bedding and partitions, and, perhaps, the act of over-crowding the cattle in one of the cars. Such injury was of a kind likely to happen in the ordinary course of things, and was therefore the natural and proximate consequence of the negligence complained of, in the absence of some intervening cause which may have produced it. The duty thus violated by the defendant, was the duty to deliver the cattle in a safe condition to be transported by the connecting road—this having been undertaken by the defendant under circumstances to relieve the plaintiff of such obligation. There was no duty on the connecting road to do more than to transport, and this it did. It was under no liability for failing to take care of the stock during the period of transportation.

The evidence further tends to show that the plaintiff did all in his power to avert the damage which resulted from the negligence in question, and hence no act of contributory negligence can be imputed to him. In this view of the case, all of the charges requested by the defendant were properly refused.

10. This is manifestly not a suit for a tort perpetrated by a foreign corporation in another State, based on a violation of duty growing out of a contract made in such foreign jurisdiction, as was the case of *Central R. R. & B. Co. v. Carr*, 76 Ala. 388; 52 Amer. Rep. 339. The defendant is a domestic corporation, and the contract made the basis of the alleged breach of duty was also made in this State, There can be no doubt of the proposition, therefore, that the courts of this State have jurisdiction of the case made by the pleadings and evidence.

11. As to the rulings of the court on the pleadings, we may observe that we discover no error. The various amendments allowed to the complaint do not, in our opinion, introduce a new cause of action different from that stated in the original count of the complaint. The *gravamen* of the action is an injury caused to twelve head of cattle shipped by the plaintiff on the defendant's railroad, on April 29th, 1886, which injury was alleged to be the result of the de-defendant's negligence. The several amendments each make a case based on some alleged violation of duty growing out of the undertaking to ship these same cattle. They may correct a misdescription of the contract, as to the agreed point of destination of the cattle, or otherwise cure an imperfect statement of the same subject-matter, or add new averments of facts, more clearly showing the negligence complained of, or otherwise altering the grounds of recovery, or varying the alleged mode in which the defendant has violated his duties growing out of the agreement embraced in the bill of lading; but they go no further. The identity of the matter upon which the suit is founded, is fully preserved. The amendments all fall within the *lis pendens* proper, and only subserve the purpose of accomplishing substantial justice between the parties, and of deciding the pending controversy on its real and true merits. This is the main design of all statutes allowing amendments to pleadings. The statute of limitations of one year was, for these reasons, no sufficient answer to the new counts added to the complaint by way of amendment.—*Ala. Gr. So. R. R. Co. v. Chapman*, 83 Ala. 453; *Stevenson v. Mudgett*, 34 Amer. Dec. 155, and *note* pp. 158-160; *Dowling v. Blackman*, 70 Ala. 303; *Long v. Patterson*, 51 Ala. 414; *Albright v. Mills*, 86 Ala. 324.

The assignments of error not particularly considered are, in our judgment, not well taken.

We discover no error in the record, and the judgment is affirmed.